# 24-0490-cv

## United States Court of Appeals

### *for the*

### Second Circuit

RIPPLE ANALYTICS INC.,

*Plaintiff-Counter-Defendant-Appellant,*

— v. —

PEOPLE CENTER, INC., d/b/a Rippling,

*Defendant-Counter-Claimant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR PLAINTIFF-COUNTER-DEFENDANT-APPELLANT

NICOLE SULLIVAN
WHITE AND WILLIAMS LLP
*Attorneys for Plaintiff-Counter-Defendant-Appellant*
Seven Times Square, Suite 2900
New York, New York 10036
(212) 244-9500

CP COUNSEL PRESS     (800) 4-APPEAL • (330359)

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned represents that Ripple Analytics, Inc. has no parent company, issues no stock and no publicly held corporation owns 10% or more of its stock.

Dated:      August 9, 2024

**WHITE AND WILLIAMS LLP**

  /s/Nicole A. Sullivan
Nicole A. Sullivan, Esq.
Thomas E. Butler, Esq.
7 Times Square, Suite 2900
New York, New York 100306
212. 631.4420
sullivann@whiteandwilliams.com
butlert@whiteandwilliams.com
*Attorneys for Appellant Ripple Analytics Inc.*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS .......................................................................................... ii

TABLE OF AUTHORITIES ................................................................................. iv

JURISDICTIONAL STATEMENT ....................................................................... 1

STATEMENT OF ISSUES ..................................................................................... 3

SUMMARY OF ARGUMENT ............................................................................... 4

STANDARD OF REVIEW ..................................................................................... 8

STATEMENT OF THE CASE ............................................................................... 9

    I.     Background ..................................................................................... 9

    II.    The Assignment is Addressed in the Litigation ....................... 11

    III.   The Dismissal and Motion to Amend ....................................... 13

ARGUMENT ......................................................................................................... 15

I.    THE LOWER COURT ABUSED ITS DISCRETION IN ALLOWING APPELLEE TO AMEND ITS ANSWER TO ASSERT AN AFFIRMATIVE DEFENSE FOR LACK OF STANDING ................................................................ 15

    A.    Ripple has Statutory and Article III Standing so the Amendment was Futile ....................................................... 16

        1.    Ripple has Article III Standing ....................................... 16

        2.    Ripple has Statutory Standing ....................................... 20

        3.    Appellee Waived the Defense of Statutory Standing .............................. 21

        4.    Appellee's Lack of Diligence in Seeking to Amend Should have Been Dispositive ....................................................... 22

        5.    The Trial Court Failed to Make Any Finding of "Good Cause" Pursuant to Rule 16 ....................................................... 26

        6.    Appellee Failed to Demonstrate "Good Cause" Pursuant to Rule 16 ....................................................... 27

II.    RIPPLE IS THE REAL PARTY IN INTEREST AND IN ANY EVENT MR. PUSEY PROPERLY RATIFIED THE OPERATIVE PLEADING TO BE ADDED AS A PARTY UNDER RULE 17 ....................................................... 29

A.  The Assignment to Ripple's Sole Owner Did Not Alter Ripple's Ownership of the Trademark Because its Continued Use was For the Business, Products and Services Offered by Ripple ..........................................30

B.  The Lower Court Abused Its Discretion In Not Allowing Ratification Under Rule 17 ...........................................................................33

  1.  Mr. Pusey Timely Ratified the Operative Pleading ................................34

  2.  Mr. Pusey Properly Ratified the Operative Pleading..............................35

  3.  The Operative Allegations are the Same and  There is No Prejudice to Rippling and No Bad Faith ...............................................................39

III.  THE LOWER COURT ERRED IN GRANTING APPELLEE'S MOTION TO DISMISS PLAINTIFF'S UNFAIR COMPETITION CLAIMS UNDER FEDERAL AND NEW YORK STATE LAW WITHOUT PREJUDICE PURSUANT TO FED. R. CIV. P. 17....................................................41

A.  The Lower Court Erred by Refusing to Recognize Appellant as a "User" of the Mark ...............................................................................43

B.  Appellee's Bad Faith is Sufficient to Sustain the New York Unfair Competition Claim ..............................................................45

IV.  THE LOWER COURT'S RULING ON RIPPLE'S MOTION FOR LEAVE TO AMEND APPLIED THE INCORRECT STANDARD AND MISCONSTRUED APPLICABLE LAW ............................................45

A.  The R&R Erroneously Required a "Proprietary Right," Effectively Applying the Standing Requirement of Section 32 Rather Than Section 43(a) of the Lanham Act...................................................................46

B.  The R&R Failed to Recognize  Appellant's Standing as an Implied "Licensee".........................................................................49

C.  Ripple Has Standing to Bring a State Unfair Competition Claim ..............54

CONCLUSION ......................................................................56

-iii-

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*2 Gilson on Trademarks § 3.02[1] (Mathew Bender & Co., Inc.)*
  *(Sept. 2023)* ........................................................................30

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
  106 F3d 11 (2d Cir. 1997) ..........................................34, 39

*Alke v. Adams*,
  826 F. App'x 4 (2d Cir. 2020) ..............................8, 39, 41

*B&B Hardware v. Hargis Indus.*, 575 U.S. 138, 144-45 (2015) ...........43

*Baker v. Car*,
  369 U.S. 186 (1962) ................................................16

*Berni v. Int'l Gourmet Rests. of Am., Inc.*,
  838 F.2d 642 (2d Cir. 1988) ..............................20, 44, 48

*Birthright v. Birthright, Inc.*,
  827 F. Supp. 1114 (D.N.J. 1993) ..................................52

*Blumenthal Distrib. v. Exec. Chair, Inc.*,
  No. CV-10-1280, 2010 U.S. Dist. LEXIS 142193 (E.D.N.Y Nov.
  9, 2010) ........................................................17

*Calvin Klein Jeanswear Co. v. Tunnel Trading*,
  No. 98-Civ-5408 (THK), 2001 U.S. Dist. LEXIS 18738 (S.D.N.Y.
  Nov. 16, 2001) ...........................................48, 49, 50, 51

*Canzoneri v. Inc. Vill. of Rockville Ctr.*,
  986 F. Supp. 2d 194 (E.D.N.Y. 2013) ..............................21

*Cent. States Southeast & Southwest Areas Health & Welfare Fund v.*
  *Merck-Medco Managed Care, L.L.C.*,
  433 F.3d 181 (2d Cir. 2005) .......................................18

*Citizens for Responsibility and Ethics in Wash. v. Trump*,
  953 F. 3d 178 (2d Cir. 2019) ......................................16

*Classicberry Ltd. v. Musicmaker.com, Inc.*,
  48 F. App'x 360 (2d Cir. 2002) ............................................................8

*Cortlandt St. Recovery Corp. v. Hellas Telecom.*,
  790 F.3d 411 (2d Cir. 2015) ...........................................25, 34, 38, 39

*D.H. Pace Co. v. OGD Equip. Co., LLC*,
  No. 22-10985, 2023 WL 5362854 (11th Cir. Aug. 22, 2023)............50

*Div. 1181 Amalgamated Tr. Union-N.Y. Emples. Pension Fund v B &
  M Escorts, Inc.*,
  No. 16-cv-2498, 2018 U.S. Dist. LEXIS 89235 (E.D.N.Y. May 28,
  2018) ..............................................................................................21

*Ellington v. Harbrew Imports Ltd.*,
  812 F.Supp.2d 186 (E.D.N.Y. 2011) ..........................................45, 54

*Excimer Assoc. v. LCA Vision, Inc.*,
  292 F.3d 134 (2d Cir. 2002) ............................................................42

*FDIC v. Horn*,
  No. CV 12-5958, 2015 U.S. Dist. LEXIS 48386 (E.D.N.Y. Mar.
  12, 2015) ........................................................................................28

*Fund Liquidation Holdings, LLC v. The Bank of Am. Corp.*
  991 F. 3d 370 (2d Cir. 2021) ............................................................8

*Gowanus Dredgers v. Baardi*,
  No. 11-CV-5985 (PKC), 2013 U.S. Dist. LEXIS 176997
  (E.D.N.Y. Dec. 17, 2013) ................................................................19

*Grochowski v. Phoenix Constr., Ypsilon Constr., Corp.*,
  318 F. 3d 80 (2d Cir. 2003) ........................................................23, 27

*Harrington v. Atl. Sounding Co.*,
  602 F.3d 113 (2d Cir. 2010) ............................................................35

*Hotaling & Co., LLC v. LY Berditchev Corp.*,
  No. 20-cv-16366, 2021 WL 3783260 (D.N.J. Aug. 26, 2021)...........50

*ITC Ltd. v. Punchgini, Inc.*,
  482 F.3d 135 (2d Cir. 2007) ............................................................56

*Jose Luis Pelaez, Inc. v. McGraw-Hill Global Educ. Holdings LLC*,
   399 F. Supp. 3d 120 (S.D.N.Y. 2019) ................................................52

*Kawa v. U.S.*,
   8 Fed. Cl. 575 (2009) .........................................................................34

*Klein v. Qlik Tech., Inc.*,
   906 F.3d 215 (2d Cir. 2018) .............................................................. 39

*L'oreal USA, Inc. v. Trend Beauty Corp.*,
   No. 11 Civ. 4187, 2013 U.S. Dist. LEXIS 115 795 (Aug. 15, 2013)................20

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*,
   192 F.3d 337 ............................................................................... 19, 30

*Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118
   (2014) ................................................................................................50

*Lynch v. City of New York*,
   589 F.3d 94 (2d Cir. 2009) ................................................................29

*Massachusetts v. E.P.A.*,
   549 U.S. 497 (2007)............................................................................16

*Mastercard Intl., Inc. v. Sprint Communs. Co.*,
   No. 94 Civ. 1051 (JSM),1994 U.S. Dist. LEXIS 3398 (S.D.N.Y.
   Mar. 23, 1994)....................................................................................54

*Mhany Mgt. v Inc. Vil. of Garden City & Garden City Bd. of Trustees*,
   985 F. Supp. 2d 390 (E.D.N.Y. 2013) ...............................................21

*Nespresso USA, Inc. v. Peet's Coffee, Inc.*,
   No. 22-cv-02209 (CM), 2023 WL 374980 (S.D.N.Y. Jan. 24,
   2023) ...................................................................................................1

*O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on September 11,
   2001 (Asat Trust Reg.)*,
   714 F.3d 659 (2d Cir. 2013) ..............................................................42

*Parker v. Columbia Pictures Indus.*,
   204 F.3d 326 (2d Cir. 2000) .........................................................27, 28

*Phyllis Schlafly Revocable Trust v. Cori*,
No. 4:16-cv-01631-JAR, 2022 WL 898760 (E.D. Mo. Mar. 28, 2022) ..................................................................................50

*Polaroid corp. v. Polarad Elecs. Corp.*,
287 F.2d 492 (2d Cir. 1961) ..............................................53

*PPX Enters. v. Audiofidelity, Inc.*,
746 F2d 120 (2d Cir. 1984) ..............................................49

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
614 F.3d 57 (3d Cir. 2010) ...............................................27

*Rapture Shipping, Ltd. v Allround Fuel Trading Chemoil B.V.*,
No. 03 Civ. 738, 2006 U.S. Dist. LEXIS 78491 (S.D.N.Y. Oct. 26, 2006) ............................................................23, 27

*RBCI Holdings, Inc. v Drinks Ams. Holdings, Ltd.*,
No. 07 Civ. 2877, 2008 US Dist LEXIS 26122 (S.D.N.Y. Mar. 20, 2008) ..............................................17, 47, 51

*Robi v. Reed*,
173 F.3d 736 (9th Cir. 1999) .............................................31

*Rolle v. Hardwick*,
14-CV-5247, 2016 U.S. Dist. LEXIS 60112 (E.D.N.Y. May 4, 2016) .........................................................................33

*Shandong Shinho Food Indus., Co., Ltd. v. May Flower Int'l, Inc.*
521 F. Supp. 3d 222 (E.D.N.Y. 2021) ...........................47, 51

*Silverstar Enters. Inc. v. Aday*,
537 F. Supp. 236 (S.D.N.Y. 1982) ....................................49

*Sissel v Rehwaldt*,
519 F. App'x 13 (2d Cir. 2013) .....................................8, 45

*Sullivan v. W.N.Y. Residential, Inc.*,
01-CV-7847 (ILG), 2003 U.S. Dist. LEXIS 6498 (E.D.N.Y. March 5, 2003) ........................................................................42

*Thursday LLC v. DNVB, Inc.*,
  20 Civ. 9142, 2021 U.S. Dist. LEXIS 121634 (S.D.N.Y. June 29, 2021) ............................................................................................ 31, 55

*Tiffany & Co. v. Costco Wholesale Corp.*,
  971 F.3d 74 (2d Cir. 2020) ...................................................................53

*Twentieth Century Fox Film Corp. v. Marvel Enters.*,
  277 F.3d 253 (2d Cir. 2002) .................................................................54

*United Drug Co. v. Theodore Rectanus Co.*,
  248 U.S. 90 (1918) ................................................................................31

*United States Jaycees v. Phila. Jaycees*,
  639 F.2d 134 (3d Cir.1981) ..................................................................52

*Van Praagh v. Gratton*, 993 F.Supp. 2d 293, 301 (E.D.N.Y. 2014) .....................53

*Villanova Univ. v. Villanova, Alumni Educ. Foundation Inc.*,
  123 F. Supp. 2d 293 (E.D. Pa. 2000) ...................................................50

*Wallace v. Health Quest Sys.*,
  No. 20 CV 545, 2021 U.S. Dist. LEXIS 54557 (S.D. N.Y. Mar. 22, 2021) ............................................................................................ 16, 17

*Wells Fargo Bank, N.A. v First Republic Bank (In re Salander)*,
  503 B.R. 559 (S.D.N.Y. 2013) ...........................................................271

*Williams v. Citi Group, Inc.*,
  659 F. 3d 208 (2d Cir. 2011) ................................................................23

**FEDERAL STATUTES**

15 U.S.C. § 1114 ................................................................................1, 13

15 U.S.C. § 1114(1) ..........................................................................4, 20

15 U.S.C. § 1125(a) .......................................................................*passim*

15 U.S.C. § 1125(a)(1)(A) .....................................................................21

15 U.S.C. § 1127 ...................................................................................19

28 U.S.C. § 1291 ....................................................................................2

**OTHER STATUTES**

NEW YORK STATE LAW.........................................................................49

**RULES**

Fed R. Civ. P. 15.................................................................................26

Fed. R. Civ. P. 16..........................................................................26, 27

Fed. R. Civ. P. 17...........................................................................*passim*

**OTHER AUTHORITIES**

*McCarthy on Trademarks and Unfair Competition* § 18:43.50 (5th ed.)....................................................................................................50

*McCarthy on Trademarks and Unfair Competition* § 27.21 (5th ed.)....................51

*Moore's Federal Practice* – Civil § 17.11[1][a] (Matthew Bender & Co., Inc. 2022) ...............................................................................33

# JURISDICTIONAL STATEMENT

Appellant Ripple Analytics, Inc. brought the underlying action against Appellee People Center Inc. d/b/a Rippling seeking to recover damages arising out of Appellee's willful and intentional infringement of its registered trademark. Appellant asserted causes of action for: violation of Section 32 of the Lanham Act, 15 U.S.C. §1114, unfair business competition (false designation of origin) under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and unfair competition under New York state common law. (A-22).

On July 8, 2022, the District Court granted Appellee's Motion for Leave to Amend its Answer (A-468) and it then filed its Amended Answer and Counterclaim (A-170). On August 10, 2023, Appellee filed a Rule 17 Motion to Dismiss with Prejudice and Rule 56 Motion for Summary Judgment. (CA-361-662).

On July 26, 2023, the District Court granted Appellant's Rule 17 motion and dismissed the trademark infringement claim under 15 U.S.C. §1114 with prejudice on the ground Appellant is not the real party in interest. (SPA-1). The District Court also dismissed without prejudice, the unfair business competition (false designation of origin) under 15 U.S.C. § 1125(a) and unfair competition under New York state common law (SPA-1) because the current pleading did not plead standing but allowed Appellant to move to amend. (SPA-1).

On August 22, 2023, Appellant filed its motion to amend and conformed the amended allegations with the District Court's order and the facts developed in discovery. (A-238-9). On January 5, 2024, Magistrate Judge Arlene Lindsay issued a report and recommendation that Ripple's motion to amend should be denied on the grounds that it was futile. (A-324). On February 5, 2024, Judge Gary R. Brown adopted the report and recommendation in a minute order stating that Appellant failed to raise any colorable objection to the Report and Recommendation. (A-1). That same day, the Clerk of the Court issued the Judgment denying the motion to amend, declining to exercise pendent jurisdiction and closing the case (SPA-13).

Appellant timely filed its notice of appeal on February 22, 2024. (A-469). This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## <u>STATEMENT OF ISSUES</u>

1.      Whether the lower court erred in allowing Appellee to amend its answer to assert an affirmative defense of lack of standing when there was no good cause, and the amendment would be futile given that Ripple had standing.

2.      Whether the lower court erred in refusing to allow Noah Pusey, Appellant's sole shareholder to ratify the pleading and become a party Plaintiff pursuant to Fed. R. Civ. P. 17.

3.      Whether the lower court erred in dismissing Appellant's trademark infringement claim with prejudice pursuant to Rule 17.

4.      Whether the lower court erred in granting Appellee's motion to dismiss Appellant's unfair competition claim under federal and New York State law without prejudice pursuant to Rule 17.

5.      Whether the lower court erred in denying Appellant's motion to amend the complaint based on the finding that an amendment to the allegations would be futile.

## SUMMARY OF ARGUMENT

The lower court made no fewer than five separate erroneous findings below, each of which is an independent reason why the Judgment must be reversed.

First, the lower court erred when it allowed Appellee to amend its answer to assert a defense for lack of standing. Appellee's amendment was futile, and its motion was not pursued with appropriate diligence. Appellant had both Article III and statutory standing to pursue claims for trademark infringement and unfair competition under both the Lanham Act and New York State common law. Article III standing existed because Appellant pled, and could demonstrate, that it suffered an injury in fact, that there was a causal connection between that injury and the conduct complained of the likelihood that the injury would be redressed by a favorable decision here. Appellant also had statutory standing to pursue a trademark infringement claim under 15 U.S.C. § 1114(1). That section grants standing to the owner *or registrant* of the trademark. Appellant was indisputably the registrant of the trademark. Appellant also had statutory standing to assert a claim under 15 U.S.C. §1125(a), which permits the user or licensee of a trademark to pursue redress for potential commercial or competitive injury. Appellant unquestionably was the "user" of the mark in question and suffered potential commercial or competitive injury allowing it to bring a claim.

Moreover, Appellee waived its defense of statutory standing given that it did not plead the defense in its Answer and was not diligent in asserting it once discovered. It first learned of the assignment that formed the basis of its standing defense on October 5, 2020, but failed to do anything for more than a year. Appellant was prejudiced by Appellee's unreasonable delay given that it asserted this defense at the eleventh hour after discovery was completed and shortly before the case was scheduled for trial.

Second, the court erred when it refused to allow Noah Pusey to be added as a party Plaintiff pursuant to Rule 17. Mr. Pusey, the assignee of the mark in question, was also a 100% shareholder of Appellant who directed the litigation from the outset. Given the commonality between Mr. Pusey and the Appellant, allowing Mr. Pusey to ratify the pleading under Rule 17 would not have required any additional discovery or prejudiced Appellee in any other way with respect to the claims asserted. Moreover, Mr. Pusey and Appellant acted at all times in good faith with a genuine belief that Appellant was the true owner of the mark given that the assignment was merely a corporate reorganization that did not alter the business in any fashion. The lower court also ignored precedent in this Circuit that favors resolution of claims on the merits and that mandates that substitution and ratification be liberally allowed under Rule 17.

Third, the lower court erred when it dismissed Appellant's trademark infringement claim with prejudice pursuant to Rule 17. The lower court erroneously concluded that Appellant, the registrant of the mark, did not have standing to assert trademark infringement claims. The lower court also erroneously determined that Mr. Pusey had not properly ratified the allegations in the Complaint, which conclusion was contrary to law for several reasons.

Mr. Pusey specifically indicated that he wished to join the case as a *party plaintiff*, thereby necessarily agreeing to be bound by the result. The lower court also misconstrued a sentence in Appellant's pre-motion letter submitted indicating that if the lower court refused to let Mr. Pusey join the litigation, it would lead to a new lawsuit. The letter did not indicate a refusal to be bound but rather the opposite –if Mr. Pusey was not added to the existing litigation (and therefore not a party bound by the result) it likely would lead to a further claim in his name. The lower court likewise misconstrued a statement made by counsel during a pre-argument conference as an indication of a refusal to be bound. At the same time, the lower court completely disregarded the unequivocal, affirmative statement in the Memorandum of Law that Mr. Pusey would be bound if his ratification was accepted.

The lower court also erroneously found that Mr. Pusey and Appellant did not act diligently in addressing this issue, a determination that stood in marked contrast

to the lower court's determination that the Appellee should be permitted to amend despite sitting on its rights for over a year.

Fourth, the lower court erred when it dismissed without prejudice for lack of standing Appellant's unfair competition claims under federal and New York State law. The dismissal was erroneous because Appellant unquestionably had standing to assert both unfair competition claims. Under 15 U.S.C. §1125(a), a user of a trademark may assert a claim. Appellant unquestionably was a user of the mark and therefore had standing. The lower court improperly applied a different standard and erroneously determined that Ripple's right to use the mark was somehow "speculative" or "inscrutable."

Finally, the lower court erred in denying Appellant's motion to amend the complaint because it would be futile based on its erroneous determination that Appellant failed to provide a legitimate basis for bringing the case as a "mere user" without proof of "ownership of a proprietary right" and without providing necessary "specificity." This is contrary to settled law which allows a user who faces potential competitive or commercial injury to pursue a claim under Section 43(a). The determination effectively applied the standing requirement for a Section 32 claim rather than the Section 43(a) claim asserted.

For all of these reasons, the Judgment should be reversed.

## STANDARD OF REVIEW

With respect to whether the lower court erred in permitting Appellee to amend its answer to assert an affirmative defense of lack of standing, the standard of review is reviewed abuse of discretion. *Classicberry Ltd. v. Musicmaker.com, Inc.,* 48 F. App'x 360, 361 (2d Cir. 2002).

With respect to whether the lower court erred in refusing to allow Mr. Pusey to ratify the pleading pursuant to Rule 17, the standard of review is abuse of discretion. *Fund Liquidation Holdings, LLC v. The Bank of Am. Corp.* 991 F. 3d 370, 375 (2d Cir. 2021).

With respect to whether the lower court erred in dismissing Appellant's trademark infringement claim with prejudice pursuant to Fed R. Civ. P. 17, the standard of review is *de novo*. *Alke v. Adams*, 826 F. App'x 4, 6 (2d Cir. 2020).

With respect to whether the lower court erred in granting Appellee's motion to dismiss the unfair competition claims under federal and New York State law without prejudice, the standard of review is *de novo*. *Alke*, 826 F. App'x at 6.

With respect to whether the lower court erred in denying Appellant's motion to amend the complaint the standard of review is *de novo*. *Sissel v Rehwaldt*, 519 F. App'x 13, 14 (2d Cir. 2013) ("where the denial [of a motion for leave to amend] is based on rulings of law, the Appellate Court's review is de novo").

## STATEMENT OF THE CASE

### I.    Background

Ripple filed the underlying litigation on February 19, 2020 to protect its trademark, RIPPLE® (U.S. Reg. 5,430,908), which it had been using continuously since April 2015 in connection with its human resources related software platform and which became a registered trademark on March 27, 2018. CA-503. Ripple had applied to register the Ripple trademark with the USPTO on August 21, 2016 based on its own use and ownership of the trademark in connection with its human resource related functions. A-44. Subsequently, on March 27,2018, Rippling filed a registration application with USPTO for the trademark RIPPLING in which the Appellee asserted that it had been using that mark in connection with human resource related software platform beginning on December 22, 2016. A-44. On August 9,2017, the USPTO issued an Office Action informing Rippling that it would not register the RIPPLING mark based on the likelihood of confusion with Appellant's RIPPLE mark. A-49-56. Rippling did not respond and made no effort to prosecute its purported ownership of the RIPPLING mark, and after nearly a year, the USPTO informed Rippling that its application was abandoned. CA-806 ¶ 31.

Despite having constructive notice of Ripple's ownership in the RIPPLE mark as early as May 2017, and actual notice of likelihood of confusion with Ripple no

later than August 9, 2017, Appellee proceeded to use Rippling as its business name and expand its use. A-40; CA-489-490.

After registering the trademark, Ripple underwent a reorganization. At that time, Ripple's shareholders and board of directors decided that 100% of the company should be acquired by Mr. Pusey, its CEO, co-founder, and 50% owner. CA-450-53. Mr. Pusey had co-founded the company with Derek Hedges, each with 50% ownership interest, but when Mr. Hedges passed away, his interest was dispersed. CA-439-45, 450-53, 544. The reorganization was intended to put the company back into the hands of Mr. Pusey while having the business operation continue in the Ripple corporation. CA-290-91 at 167:6-168:23. While the documentation contained the word "assignment," it was in fact meant to transfer Ripple to Mr. Pusey so that he would become the 100% owner of the business he founded without changing the corporate structure. CA-292 at 169:2-7. The business in fact continued under the name Ripple, which continued to use the mark in commerce. CA-292 at 169:2-7. Reflecting this fact, the Ripple Analytics corporate entity filed tax returns. CA-294 at 171:9-12.

The registration of the RIPPLE trademark, which was granted by the USPTO based on Ripple's use, remained at all times in the name Ripple. A-44; CA- 544 ¶ 21. Given that the parties never intended to assign the mark, no assignment was

recorded with the USPTO, and Ripple continues to be listed as registrant and presumptive owner to this day. CA-520 n. 5.

## II. The Assignment is Addressed in the Litigation

By October 5, 2020, in response to document demands served by Rippling, Ripple had produced all documents relevant to the so-called assignment. CA-286 ¶ 5. Despite having these documents in its possession, Rippling and its counsel did not raise any issues with the assignment until late 2021, at the deposition of Mr. Pusey, which took place in August. CA-267. At that time, Mr. Pusey was questioned extensively about the assignment, its purposes, and the underlying documentation. A-436-7. Appellee further questioned Mr. Pusey on this issue in November 2021, when he was once against deposed, this time as Ripple's 30(b)(6) witness. *See* A-246; 314; 436; 447-8.

Fact discovery in the case was completed shortly after the 30(b)(6) deposition. CA-267; CA-287. Thereafter, on December 30, 2021, for the first time, Rippling's attorneys questioned whether, considering the assignment, Ripple was the real party-in-interest in this case. A-420, 437. This was more than a year after documents regarding the assignment had been produced and again after fact discovery had closed. CA-286 ¶ 5, A-437. Ripple denied that it was not the real party-in-interest while agreeing to substitute or add Mr. Pusey as a plaintiff in the action so as to

avoid any possible concerns in this regard. A-437. Rippling declined the request. *Id*. 437-8.

On February 2, 2022, Appellee filed a motion to amend its Answer and Counterclaim to add an affirmative defense that Appellant lacked standing to bring these claims because it is not the real party in interest. CA-1; CA-5. Ripple opposed the Motion pointing out that, notwithstanding the assignment, Ripple was the real party in interest. CA-259. Ripple also opposed the motion on the ground that Rippling had been dilatory in raising this issue. CA-279-81. Finally, Appellant submitted a Declaration from Mr. Pusey, wherein he indicated his agreement to join the litigation as a party plaintiff, this obviating any possible concerns. CA-285-86.

On March 4, 2022, while the Motion to Amend the Answer and Counterclaim was pending, Rippling filed a pre-motion letter to dismiss the claims under Rule 17. A-12; A-170. On March 21 June 3, 2022, Ripple filed a responsive letter asserting that Ripple had standing and was the real party in interest under controlling law, but also referencing that Mr. Pusey had earlier submitted a declaration expressing his willingness to join the litigation as a party plaintiff. A-13; A-200-02. Ripple also made the point that failure to permit Mr. Pusey to substitute into the action as a party plaintiff would cause unnecessary expense and be contrary to judicial efficiency given that Mr. Pusey would then have to start a new action in his own name, which likely would repeat much of the discovery and other efforts in the first action. *Id*.

The lower court ordered, and the parties appeared for a pre-motion conference on July 8, 2022, at which a lengthy discussion regarding the issues ensued. A-14; A-203-37. During that conference, the lower court raised various observations and concerns regarding the motions and the situation generally. *Id.* The lower court questioned Ripple's counsel about the substitution of Mr. Pusey. *Id.* at p. 12. Ripple's counsel indicated, consistent with its prior position, that Ripple had standing to proceed and that if Mr. Pusey were to join the litigation, he would assert independent claims. *Id.* During the conference, the lower court also questioned Appellee's counsel about its claim of prejudice, noting that given that they had already deposed Mr. Pusey twice, they had already received adequate discovery and information regarding his position. A-207-9; A-436. Thereafter, the Appellee filed its Rule 17 motion, as well as a separate motion for summary judgment under Rule 56. CA-361.

### III. The Dismissal and Motion to Amend

On July 26, 2023, the lower court granted the motion to dismiss Appellant's trademark infringement claim under 15 U.S.C. §1114 with prejudice pursuant to Rule 17 on the ground that it found Mr. Pusey was the real party in interest and should have been named as a plaintiff. SPA-1. The lower court cited to the fact that Mr. Pusey's declaration did not specifically state his intention to be "bound" by any decision in the action. SPA-3. The lower court also pointed to a single sentence in

-13-

Ripple's pre-motion letter "[I]f Rippling's legal position were correct, it would simply lead to a dismissal of Ripple's action and the immediate filing by Pusey of the exact same claims against Rippling, resulting in the parties starting the process from scratch", which the lower court contended was an indication that Mr. Pusey did not plan to be bound by the result of the case. SPA-7. In addition, the lower court pointed to an off-hand remark by counsel during pre-motion conference. SPA-3. The lower court also held that Ripple had not been diligent in addressing this matter, suggesting that Ripple should have agreed to substitution prior to the Motion to Amend the Answer even being decided. SPA-5-7. With respect to the unfair competition (false designation of origin) under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and unfair competition under New York state common law, the lower court granted the motion to dismiss without prejudice on the grounds that the current pleading did not articulate its basis for standing with respect to those claims. SPA-11-12. The lower court then permitted the Appellant an opportunity to seek leave to amend the complaint to address its standing. SPA-12.

On August 22, 2023, Appellant filed its motion to amend, including a proposed amended complaint to conform the allegations with the lower court's order and the facts developed in discovery. A-238, A-240-60. On January 5, 2024, Magistrate Judge Arlene Lindsay issued a report and recommendation finding that Ripple's motion to amend should be denied on the grounds that it was futile. A-324-

-14-

3. Specifically, Judge Lindsay held "[g]iven [Judge Brown's ruling pursuant to Rule 17], what remains for the undersigned is to address is whether Ripple -who now claims to be a licensee rather than simply a 'user' -has successfully articulated that it falls within the zone of interest protected by the law." A-329. On February 5, 2024, Judge Gary R. Brown adopted the report and recommendation in a minute order stating that Appellant failed to raise any colorable objection to the Report and Recommendation. On the same day, the Clerk of the Court issued a Judgment denying the motion to amend, declining to exercise pendent jurisdiction and closing the case. A-19-20.

## ARGUMENT

### I. THE LOWER COURT ABUSED ITS DISCRETION IN ALLOWING APPELLEE TO AMEND ITS ANSWER TO ASSERT AN AFFIRMATIVE DEFENSE FOR LACK OF STANDING

The lower court abused its discretion erred when it allowed the Appellee to amend its Answer to assert an affirmative defense of standing. The proposed amendment was futile, given that Ripple plainly had standing to assert its claims. It also was untimely, given that Rippling waited well over a year after it discovered the basis for its defense, long after its time to do so under the case management order expired and after the close of discovery to seek to amend.

A.    **Ripple has Statutory and Article III Standing so the Amendment was Futile**

The lower court should have denied the Motion to Amend due to its futility given Ripple has both Article III and statutory standing.

1.    **Ripple has Article III Standing**

Article III standing requires a showing of: 1) injury in fact; 2) a causal connection between the injury and the conduct complained of; and, 3) likelihood – as opposed to mere speculation – that the injury will be redressed by a favorable decision. *See Citizens for Responsibility and Ethics in Wash. v. Trump*, 953 F. 3d 178, 189 (2d Cir. 2019). "[T]he gist of the question of standing is whether petitioners have in 'such a personal stake in the outcome of the controversy as to assure the concrete adverseness which sharpens the presentation of issues upon which the Court so largely depends for illumination.'" *Massachusetts v. E.P.A.,* 549 U.S. 497, 517 (2007) (*quoting Baker v. Car*, 369 U.S. 186, 204 (1962)). The injury in fact requirement is "a low threshold which helps to ensure that the plaintiff has a personal stake in the outcome of the controversy." *Wallace v. Health Quest Sys.,* No. 20 CV 545, 2021 U.S. Dist. LEXIS 54557, at *11-12 (S.D. N.Y. Mar. 22, 2021).

The Complaint below plainly and properly alleged that Ripple suffered an "injury in fact" arising from Rippling's infringement of the RIPPLE Mark, and the evidence uncovered in in discovery reinforced that. CA-296 ¶¶[22-29.] The Complaint alleges that Ripple and Rippling are competitors and that Rippling's use of the

-16-

RIPPLE Mark gave Rippling a competitive advantage in the marketplace that has harmed Ripple. CA-296 ¶¶13-15, 18-21, 25-29. As a result of Rippling's infringement, there has been confusion in the marketplace between the two companies, undermining Ripple's ability to grow its revenue. Ripple operates in the human resources software space using the RIPPLE Mark and continues to be harmed by Rippling's willful and knowing use of the confusingly similar RIPPLING mark for its own competing software. *Id.* ¶27.

These allegations are more than sufficient to allege that Ripple has suffered threatened or actual harm under the Lanham Act and a common law unfair competition claim. *See RBCI Holdings, Inc. v Drinks Ams. Holdings, Ltd.,* No. 07 Civ. 2877, 2008 U.S. Dist LEXIS 26122, at *8-9 (S.D.N.Y. Mar. 20, 2008) ("Here, [defendant] does not distinguish between Article III standing and statutory standing, but the essence of its argument is a statutory one -- it contends that [plaintiff] does not have standing under the Lanham Act. Indeed, [plaintiff] clearly has Article III standing in that it alleges that it "has suffered 'some threatened or actual injury resulting from the putatively illegal action'"); *Blumenthal Distrib. v. Exec. Chair, Inc.*, No. CV-10-1280, 2010 U.S. Dist. LEXIS 142193, at *30-31 (E.D.N.Y Nov. 9, 2010) ("The essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods"); *Wallace v Health Quest Sys.*, No. 20 CV 545, 2021 U.S. Dist.

LEXIS 54557, at *11-12 (S.D.N.Y. Mar. 22, 2021) ("Satisfying the injury-in-fact requirement is 'a low threshold which helps to ensure that the plaintiff has a personal stake in the outcome of the controversy'").

Moreover, the party that Rippling claimed was the "real" owner of the mark is Mr. Pusey, the 100% owner of Ripple and the individual who commenced and has pursued the lawsuit on its behalf. CA-286 ¶ 6. The principal bases for the constitutional standing requirement are ensuring that 1) the plaintiff is properly incentivized to advocate its position zealously; and 2) the court is not adjudicating the rights of a third party who may be satisfied with the status quo. These concerns are not in issue here given that by Appellee's reckoning Mr. Pusey is the owner of Ripple and has directed the lawsuit from the start. And while any ultimate benefit to Ripple would benefit Mr. Pusey, Ripple itself is the victim of the continuing harm from Appellee's illegal actions. *See Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 197-198 (2d Cir. 2005) ("As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally"). For purposes of the defense of the trademark, Ripple is

-18-

Mr. Pusey and Mr. Pusey is Ripple. The issue of constitutional standing is nothing more than an academic debate here.[2]

The mere fact that Ripple, its intellectual property, assets and liabilities were assigned and assumed by Mr. Pusey as part of a corporate restructuring does not change this analysis. This is so given that the mark is not used in commerce by Mr. Pusey in his individual capacity but by Ripple to identify the source of its products and services. CA-302-3 ¶¶ 18-21. "It generally is established that federal trademarks are acquired through use of the trademark, not registration of it." *Gowanus Dredgers v. Baardi*, No. 11-CV-5985 (PKC), 2013 U.S. Dist. LEXIS 176997, at *12 (E.D.N.Y. Dec. 17, 2013). Mr. Pusey has testified that the "assignment" was done in the process of a corporate restructuring so that he would be the 100% owner of the company. CA-288, 291-93. Ripple continues to use the mark in operating its business -- which has been purchased by and continues to run under Mr. Pusey. Also, at mark is not intended to identify and be used by an individual, but by the company to identify the source of its products and services. *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337. 343-44 (2d Cir. 1999); *cf.* 15 U.S.C. § 1127. Ripple is not only the injured party in this case, but as discussed herein it had standing to bring the claims asserted in the Complaint as well as an opportunity to have Mr. Pusey ratify the allegations and claims if necessary to protect its business interests. As such, Ripple has constitutional standing and is the real party in interest.

### 2.     Ripple has Statutory Standing

Ripple likewise had statutory standing to assert a trademark infringement claim. Under 15 U.S. C. §1114 (1), any person who infringes on a trademark "shall be liable in a civil action by the registrant." 15 U.S.C. §1114 (1). "In the context of trademark infringement claims, §1114 (1) grants standing to the owner or registrant of the relevant trademarks*." L'oreal USA, Inc. v. Trend Beauty Corp.*, No. 11 Civ. 4187, 2013 U.S. Dist. LEXIS 115 795, at \*25 (Aug. 15, 2013) (citations omitted). Thus, Ripple, as the "registrant" of the trademark issue specifically has standing to assert trademark infringement claims notwithstanding the arguments raised by the Appellee. Even if Ripple's status as the owner were in dispute, it still has standing as a predecessor to Mr. Pusey. "Under the Act, that term includes the registrant and its 'legal representatives, predecessors, successors and assigns.'" *Berni*, 838 F.2d at 645-46 (quoting 15 U.S.C. § 1127); *see also L'Oreal USA, Inc.*, 2013 U.S. Dist. LEXIS 115795, at \*25. As such, Ripple has statutory standing under 11 U.S.C. § 1114(1). Notably, Appellee below did not cite to a single case where a trademark's registrant or its prior owner who still uses the mark in question lacked standing, presumably because none exist.

Ripple also has statutory standing to assert a claim under 15 U.S.C. §1125(a), which states that "*[a]ny person*" may bring a claim in connection with "any word, term, name, symbol, or device or any combination thereof . . . which . . . is likely to

cause confusion, or to cause a mistake, or deceive . . . as to the origin, sponsorship, or approval of his or her goods . . . by another person." 15 U.S.C. §1125(a)(1)(A) (emphasis added).[1]

### 3.    Appellee Waived the Defense of Statutory Standing

By failing to assert its alleged "statutory standing" defense timely, either as an affirmative defense or otherwise, Rippling waived it. Courts in this Circuit have expressly held that the affirmative defense of lack of statutory standing is waived if not timely asserted. *See generally Canzoneri v. Inc. Vill. of Rockville Ctr.*, 986 F. Supp. 2d 194, 200 (E.D.N.Y. 2013) (finding a challenge to statutory standing waived where it was not raised as an affirmative defense); *see also Mhany Mgt. v Inc. Vil. of Garden City & Garden City Bd. of Trustees*, 985 F. Supp. 2d 390, 411 (E.D.N.Y. 2013) ("[s]tatutory standing, unlike constitutional standing arguments, can be waived"); *Wells Fargo Bank, N.A. v First Republic Bank (In re Salander),* 503 B.R. 559, 571 (S.D.N.Y. 2013)("statutory standing arguments may be waived"); *Div. 1181 Amalgamated Tr. Union-N.Y. Emples. Pension Fund v B & M Escorts, Inc.*, No. 16-cv-2498, 2018 U.S. Dist. LEXIS 89235, at *19 (E.D.N.Y. May 28, 2018) (finding defendants waived their standing argument, having failed to timely raise it).

---

[1]    The basis for Appellant's standing under 15 U.S.C. §1125(a) is addressed in greater detail in Section II, *infra*.

Rippling's standing defense was not asserted timely as part of its Answer. Therefore, it was waived and for that reason alone the lower court should not have permitted the amendment.

### 4. Appellee's Lack of Diligence in Seeking to Amend Should have Been Dispositive

Appellee's entire basis for its affirmative defense of lack of statutory standing was the "Assignment and Assumption Agreement" and "Bill of Sale" documents pursuant to which Ripple purportedly assigned its trademark to its 100 percent sole owner, Mr. Pusey. Both of those documents were produced to Appellee on October 5, 2020. Nevertheless, Appellee did not assert the defense of lack of standing immediately or even shortly after learning of this assignment in October 2020. Likewise, Appellee took the deposition of Mr. Pusey in his individual capacity on August 26, 2021 and took his deposition in his capacity as a 30(b)(6) representative of Ripple. on November 17, 2021. On both occasions, Appellee questioned Mr. Pusey extensively about the assignment and the referenced documents. Nevertheless, Appellee raised this issue with counsel for Appellant for the first time on or about December 30, 2021. This was long after the close of discovery in this case and more importantly, approximately seventeen months after Appellee first became aware of the facts that would form the basis of its argument and several months after Appellee had spent significant time questioning Mr. Pusey about this matter at his deposition. Rippling offered no justification for the lengthy delay –

-22-

simply claiming that it was "diligent." CA-14,17. But under no definition was Appellee "diligent."

Pursuant to Rule 15, before allowing amendment, courts consider the following factors: "[u]ndue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice or futility." *Williams v. Citi Group, Inc.*, 659 F. 3d 208, 214 (2d Cir. 2011). Courts in this Circuit have repeatedly held that a motion to amend should be denied where a party seeks to amend well after the date set in the Scheduling Order for such amendment and where no showing of good cause for the delay has been made. *See e.g. Rapture Shipping, Ltd. v. Allround Fuel Trading Chemoil B.V.*, No. 03 Civ. 738, 2006 US Dist. LEXIS 78491, at *6-7 (S.D.N.Y. Oct. 26, 2006); *Grochowski v. Phoenix Constr., Ypsilon Constr., Corp.*, 318 F. 3d 80, 86 (2d Cir. 2003) (upholding denial where party delayed seeking amendment over a year and filed amendment after discovery had been completed).

A consideration of these factors establishes that the lower court abused its discretion allowing this amendment in the first place. The lower court simply disregarded the inexcusable months' long delay in seeking this amendment. It likewise disregarded that discovery had been completed and that if the standing defense were ultimately successful (which it was), it would mean starting over from the beginning - - a result that could have been avoided had Appellee acted diligently.

-23-

And it disregarded that the "ownership" issue raised by Rippling was whether Ripple or its 100% owner, Mr. Pusey, owned the mark, and, at least under Rippling's theory, had standing to seek redress for its infringement.

Indeed, granting permission to amend at the eleventh hour, after the close of discovery and almost a year and a half after the basis for the standing defense was discovered, severely prejudiced the Appellant. The lower court has never determined that there was no basis for liability – or even addressed that point. Rather, it merely determined that the claims for trademark infringement belong to Mr. Pusey, rather than his wholly owned corporation Ripple. But by allowing the Appellee to make this claim at a late stage of the case and long after discovery had been completed, the lower court dictated that Mr. Pusey (as well as the Appellee) may need to start at square one, bring another action (this one in his own name) and presumably repeat at least some, if not most, of the extensive discovery and other proceedings already completed in this action, which of course will significantly delay a final resolution. This is not a case where a pure stranger to the mark was asserting claims or there was some dispute as to ownership between disparate groups or individuals, and regardless of who is the "plaintiff" the litigation would be managed by Mr. Pusey. But the consequences of allowing the Appellee to assert a new and significant claim at the eleventh hour are substantial and highly prejudicial.

Even more indicative of the abuse of discretion is the lower court's disparate treatment of the two parties. While the lower court overlooked Appellee's lengthy delay in asserting the standing defense and failure to pursue an argument it had known about for almost a year and a half until after discovery was completed, it extended no such leniency to the Appellant. As discussed *supra* at Section III, Appellant was first apprised of Appellee's concerns about standing in December of 2021 and first learned of Appellee's the intention to seek an amendment in February 2022. Appellant quickly responded by offering to add Mr. Pusey as a party. CA-472-74. That of course should have eliminated any possible concern here. The purpose of Rule 17 is to protect defendants from potential duplicative liability, not to shield them from liability to the real party in interest based on a technicality. *See Cortlandt St. Recovery Corp. v. Hellas Telecom.*, 790 F.3d 411, 421 (2d Cir. 2015) ("the modern function of the rule . . . is [] to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata").

Appellant took the same position when Appellee moved to amend its answer. Despite Appellant's immediate agreement to have Mr. Pusey join the litigation to eliminate any concerns regarding this issue, the lower court refused to do so, not only granting the Rule 17 Motion but dismissing the trademark infringement claims *with prejudice*. The lower court cited, inexplicably, Appellant's apparent "delay" in

-25-

resolving this issue. But there was no delay. That the lower court took the position that Appellant was required immediately to move to amend its own pleading in response to a proposed defense that Appellee had sat on for over a year further demonstrates an abuse of discretion here.

### 5. The Lower Court Failed to Make Any Finding of "Good Cause" Pursuant to Rule 16

Appellant filed its Complaint on February 19, 2020. A-22. Appellee filed their answer and counterclaim on April 2, 2020. A-57. The deadline for parties to amend their pleadings was July 13, 2020. A-347; CA-267.

On February 23, 2022, after discovery was complete, Appellee moved to amend its answer pursuant to Rules 15(a) and Rule 16 (CA1-3) to assert lack of standing based on an assignment agreement between Appellant and its sole owner, Noah Pusey. Notably, the documents which served as the basis for Appellee's amended answer were produced on October 5, 2020 – 16 months before Appellee brought the Motion. CA-286 ¶ 5. Appellee admitted this fact in the Motion. CA-16. At the hearing, the lower court stated "this is easy. I'm granting the motion to amend. I'm going to grant the motion to amend liberally." A-125 at 31:27-29. There was virtually no discussion of the merits before the court. After the lower court summarily granted leave to amend Appellee filed its Amended Answer on July 12, 2022. A-170.

### 6. Appellee Failed to Demonstrate "Good Cause" Pursuant to Rule 16

Once the scheduling order issues, a party must show good cause to deviate from it. Fed. R. Civ. P. 16(b)(4); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("Several circuits have ruled that the Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings … Moreover, we agree with these courts that a finding of 'good cause' depends on the diligence of the moving party"). Appellee cannot fain diligence nor promptness nor any good cause in seeking to amend its answer in February of 2022.

The "Assignment and Assumption Agreement" and "Bill of Sale" documents, upon which Appellee's entire Motion is predicated, were produced on October 5, 2020. CA-286 ¶ 5. Courts in this Circuit have refused to grant leave to amend where the moving party seeks to amend well after the date set in the scheduling order and has not made a showing of good cause. *See e.g. Rapture Shipping, Ltd.*, 2006 U.S. Dist. LEXIS 78491, at *6-7; *Grochowski*, 318 F.3d at 86; *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84-85 (3d Cir. 2010) (affirming denial of leave to amend after the CMO deadline and without a showing of "due diligence").

Appellee merely asserted in its briefing to the lower court that it was "diligent" in its "pursuit of discovery on ownership both before and after the deadline passed," without providing a justification for its 16-month-delay in seeking to amend its

pleading after learning of the assignment. Moreover, although Appellee questioned Mr. Pusey about these documents in both Mr. Pusey's individual and corporate representative depositions in August and November 2021, it still waited another three months before seeking leave.

There is no good cause here. Appellee did not argue good cause and the lower court made no finding with respect to Appellee's failure to promptly move after the documents were produced, or even promptly after Mr. Pusey's depositions. Without good cause, the lower court cannot allow an amendment after expiration of the deadline in the scheduling order. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (affirming denial of a motion to amend pleadings where party had "not demonstrated cause for his failure to comply with the Court's deadline"); *FDIC v. Horn*, No. CV 12-5958, 2015 U.S. Dist. LEXIS 48386, at *28 (E.D.N.Y. Mar. 12, 2015) ("Given the more than one-year delay, the Court finds that Horn has not demonstrated the necessary diligence under Rule 16(b) to amend its pleading"). Further supporting there is no good cause here is the fact that Appellee did not cite to a single case to the lower court that would support a finding of good cause when a party fails to promptly move for leave to amend after learning of the "new facts" and instead waits until the eve of discovery closing. Without good cause (or even a proffer of such), the lower court abused its discretion in permitting Appellee to amend its answer.

## II. RIPPLE IS THE REAL PARTY IN INTEREST AND, IN ANY EVENT, MR. PUSEY PROPERLY RATIFIED THE OPERATIVE PLEADING TO BE ADDED AS A PARTY UNDER RULE 17

"A district court has abused its discretion if it has (1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions." *Lynch v. City of New York*, 589 F.3d 94, 99 (2d Cir. 2009) (internal quotation marks omitted). The lower court made two erroneous findings concerning the real party in interest that should be reversed. First and foremost, Appellant had standing and is the real party in interest because it was the original trademark owner, always used the trademark in its business and the assignment to its sole owner of the trademark does not alter the fact that under the law Appellant had the right to bring its trademark infringement claim. Appellant and Mr. Pusey are not independent third parties who operate at arm's length and the assignment did not alter anything.

Second, even if Mr. Pusey was the real party in interest given the assignment, he ratified the pleading and agreed to be a party plaintiff, thereby meeting the requirements of Rule 17. The lower court imposed a higher standard than what is required under Rule 17 and then inexplicably dismissed Appellant's trademark infringement claim **with prejudice**. It appears the basis for the lower court's ruling is its misunderstanding of a single sentence in Appellant's pre-motion letter from which the lower court determined that Mr. Pusey refused to agree to be bound here.

-29-

However, this finding is not only inconsistent with the letter at issue, but also is belied by the record as a whole.

### A. The Assignment to Ripple's Sole Owner Did Not Alter Ripple's Ownership of the Trademark Because its Continued Use was For the Business, Products and Services Offered by Ripple

The lower court abused its discretion when it found that Ripple had assigned all rights in the trademark including its goodwill to Mr. Pusey, and thus, Mr. "Pusey is inarguably the real party in interest" and the only party with the right to sue for trademark infringement. SPA-5. While it is undisputed that Ripple assigned the mark to Mr. Pusey including the goodwill, it is impossible to separate Mr. Pusey's ownership of the mark from his continued use of the mark in support of Ripple's business and the services it offers. It is black letter law that a trademark can only be "us[ed] [] in commerce to designate the origin of a product or service." 2 Gilson on Trademarks § 3.02[1] (Mathew Bender & Co., Inc.) (Sept. 2023); *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337. 343-44 (2d Cir. 1999); *cf.* 15 U.S.C. § 1127 (defining "trademark" as a word "used by a person . . . to identify and distinguish his or her goods … and to indicate the source of the goods").

Consistent with the above, in *Amazon Technologies, Inc. v. Jeffrey S. Wax*, 2010 TTAB LEXIS 366, AT *22 - 25 (TTAB Aug. 31, 2010), the board concluded that the form of a transaction as a "Trademark Assignment," between joint owners, is disregarded, if it is "more akin to a change in the type of entity which owned the

application than a traditional assignment of a mark from one unrelated party to another." In *Thursday LLC v. DNVB, Inc*., 20 Civ. 9142, 2021 U.S. Dist. LEXIS 121634, at *7 (S.D.N.Y. June 29, 2021), the court held that, after a reorganization of a business, there was no new "owner," because the new entity and the original one both had the same purpose, name, trademark, and business. *See also Robi v. Reed*, 173 F.3d 736, 739-40 (9th Cir. 1999) (purported assignments to non-users have no effect; the trademark remained in the hands of those who were actually using it).

Similarly here, at all relevant times, the only business with which the trademark was used was Ripple, which is and has always been a closely held corporation with Mr. Pusey always being an owner and now sole owner. This is not a case where the assignment of the mark was to an arm's length third-party who uses the mark independent of the assignor. Indeed, a trademark identifies the business and embodies "goodwill," and thus, cannot be transferred in a way that separates it from the business in which it is used. As the Supreme Court explained in *United Drug Co. v. Theodore Rectanus Co*., 248 U.S. 90, 97 (1918):

> There is no such thing as property in a trademark except as a right appurtenant to an established business or trade in connection with which the mark is employed. … its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his and it is not the subject of property except in connection with an existing business.

The lower court did not address any of the cases cited by Ripple or address this argument at all but rather simply held that the terms of the assignment agreement were clear, that the trademark and its goodwill were assigned, and that it would not rewrite the same. SPA-5. In doing so, the lower court ignored the reality that Ripple and Pusey were effectively the same and operated in the same way before and after the assignment or that a mark (and its goodwill) must be associated with a business or its offered services and that at all times the mark was associated with, and used by, Ripple in its business. In fact, the lower court found this even though Rippling agreed that the trademark and business cannot be separated and Ripple is the user of the mark. CA-529 ("It is well-established that the ownership of a mark cannot be separated from use of the mark because the right to claim a mark rests on its use."). Nevertheless, the lower court ignored the business reality and the arguments supported by substantial case law and instead elevated form over substance. This was an abuse of discretion.

Finally, the lower court also ignored the fact that Rippling argues 1) that Ripple does not have standing to bring the trademark infringement claim because it is not the "owner" having assigned ownership to Mr. Pusey; and 2) and Mr. Pusey cannot bring a trademark infringement claim because any damages suffered did not flow to him but to Ripple as the business that benefitted from use of the trademark. CA-11-19. The juxtaposition of this argument is further evidence that Rippling's

refusal to agree to allow Mr. Pusey to be added as a party plaintiff is simply litigation strategy, which is to use procedural hiccups to avoid having to answer for its clear, intentional and willful infringement of the RIPPLE mark. The lower court permitting such blatant gamesmanship and dismissing a claim with prejudice on a procedural technicality contravenes well established legal precedent that there is a "strong preference that cases be heard on the merits." *Rolle v. Hardwick*, 14-CV-5247, 2016 U.S. Dist. LEXIS 60112, at *4 n.1 (E.D.N.Y. May 4, 2016).

### B. The Lower Court Abused Its Discretion In Not Allowing Ratification Under Rule 17

Rule 17(a)(3) of the Federal Rules of Civil Procedure states:

> **Joinder of the Real Party in Interest**. The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

After a "valid assignment," the assignee of a claim becomes the real party in interest for that claim." Moore's Federal Practice – Civil § 17.11[1][a] (Matthew Bender & Co., Inc. 2022). Thus, even if the lower court were correct and Ripple had no standing because Mr. Pusey is the only real party in interest (which, as noted above, is contrary to controlling law), once Mr. Pusey ratified the pleading, joinder under Rule 17 was appropriate. Particularly because it is well established that "[t]he broad and general principle that actions should be brought in the name of the real party in

-33-

interest and that courts **should be lenient in permitting ratification, joinder or substitution of that party.**" *Kawa v. U.S.*, 8 Fed. Cl. 575, 578 (2009) (emphasis added); *Cortlandt St. Recovery Corp.*, 790 F.3d at 421. Indeed, "[a] Rule 17(a) substitution of plaintiffs **should be liberally allowed** when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20, 36 F. 1458 (2d Cir. 1997) (emphasis added).

The lower court did not follow the precepts set forth above and instead not only rejected Mr. Pusey's timely ratification in a manner that ran contrary to the requirement of "leniency" and liberal allowance of the same, but actually dismissed the trademark claims "with prejudice." This was in error and should be reversed.

### 1. Mr. Pusey Timely Ratified the Operative Pleading

The lower court acknowledged that it is rare for a case to be dismissed under Rule 17 but found it was warranted here because it found that Ripple failed to remedy the defect here in a reasonable time. SPA-1. The lower court abused its discretion because Mr. Pusey was not at all dilatory here and ratified the operative complaint within two months of Rippling raising the mere possibility of Mr. Pusey being the real party in interest and before Rippling was even granted leave to amend its answer to add lack of standing as a defense. A-257-56; A-419-22.

-34-

As noted *supra*, Rippling understood the relevant facts as early as October 2020 but did nothing about it for more than a year. Then, at the end of December 2021, while in the thick of fact and expert discovery, Rippling first raised the issue. Ripple promptly responded as reflected in correspondence dated January 12, 2022, and January 21, 2022, indicating Ripple's position, which was expressed at two "meet and confer" calls – that Ripple is the "real party in interest," and any asserted defect was easily addressed by having Mr. Pusey ratify or join the Complaint under Rule 17. CA-469-74; CA-532-33. Rippling refused to agree to Mr. Pusey joining the action. A-437; A-421-25. Mr. Pusey then ratified the Complaint in a declaration dated February 16, 2022, less than two months after the objection was initially raised by Rippling. Mr. Pusey's ratification was timely.

## 2. Mr. Pusey Properly Ratified the Operative Pleading

The lower court further abused its discretion by finding that Mr. Pusey did not properly ratify the operative pleading because he failed to state explicitly that he agreed to be bound by the decision. SPA-3, 7. Rule 17 does not require any specific language be used in order to ratify a pleading. Ratification requires "intent to ratify plus full knowledge of all the material facts. Ratification may be express or implied, and intent may be inferred . . . from conduct on the part of the principal which is inconsistent with any other position than intent to adopt the act." *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 127 (2d Cir. 2010).

-35-

In his February 16, 2022 Declaration, Mr. Pusey stated: "By this declaration, I ratify all of Plaintiff's allegations in this case and each cause of action alleged. As a real party in interest, I am prepared to step in immediately as Plaintiff." CA-285. By expressly agreeing to be a plaintiff in this action, Mr. Pusey agreed to be bound by the results of this action – as a "plaintiff," he unquestionably would be bound. Rather than accept what clearly was Mr. Pusey's intent, the lower court sought to raise a question about it primarily by relying on a cherry-picked single sentence in Ripple's pre-motion letter with respect to a motion to dismiss under Rule 17 where it argued:

> [I]f Rippling's legal position[2] were correct, it would simply lead to a dismissal of Ripple's action and the immediate filing by Pusey of the exact same claims against Rippling resulting in the parties starting the process from scratch.

SPA-7. Citing the same, the lower court held "[t]herefore, Pusey's failure to acknowledge that he would be bound by the decision of this Court proves significant given that counsel has already threatened to file an identical suit." SPA-7.

The lower court plainly took the sentence out of context, misconstrued it, and ignored the relevant point. That point being that, if the lower court found Mr. Pusey was the real party in interest but he was not permitted to join under Rule 17 then he

---

[2] "Rippling's legal position" referred to its argument that adding Mr. Pusey as a party plaintiff would not resolve any standing defect, and thus, it would not agree to Mr. Pusey's addition to this action. *See* CA-367 pp. 9-11.

would be forced to bring a new action to protect his rights – asserting the same claims and forcing the parties to relitigate the same issues. SPA-7. It cannot be construed as a refusal to be bound by a decision in a case in which he as allowed to participate.

The lower court also took issue with Ripple's counsel response during a pre-motion conference to its question whether he was prepared to substitute Mr. Pusey in as the plaintiff.SPA-7. In fact, the lower court stretched credulity by referencing counsel's statement in which he argued that:

> So we would think that if Mr. Puce[sic] was coming into the case, Mr. Puce[sic] would be coming into the case as an additional plaintiff with claims. And with respect to -- and if that were even necessary because the rule does say that he can be substituted in or he can ratify what's in the complaint.

A-214 at17-23). Counsel simply indicated that: 1) if Mr. Pusey were allowed to come into the case, he likely would be an additional plaintiff with claims; and, 2) the rule permitted substitution or ratification. Again, there was absolutely nothing in this statement that would even suggest a refusal by Mr. Pusey to be bound by any determination in a case that he would be joining!

Notably, while the lower court found support for its determination in a pre-motion letter and in an innocuous comment by counsel during a pre-motion conference, it simply ignored Ripple's affirmative statement in its memorandum of law opposing Rule 17 dismissal wherein it unequivocally states: "Mr. Pusey has already submitted a declaration (CA-494) to explain his involvement in the case and

his ratification of the case so that he ***can be bound by it***." (CA-532) (emphasis added).[3] That statement, which is not subject to the any other interpretation, was more than sufficient to satisfy the purpose of Rule 17. *Accord* Fed. R. Civ. P. 17, Advisory Committee Notes to 1966 Amendment ("[T]he modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata."). Dismissal here does not further the purpose of Rule 17, in fact, it completely undercuts that purpose.[4]

Notwithstanding, and in a further effort to find support for its holding, the lower court also took issue with the fact that Mr. Pusey purportedly failed to take any steps to step in immediately as plaintiff and counsel's failure to state affirmatively it was ready to add Mr. Pusey as a plaintiff. SPA-3. However, the lower court ignored the fact that on neither of those occasions had a defense of standing even been asserted by Rippling. Nor is any of this evidence that Mr. Pusey was unwilling to be bound by the results of this action. Once again, the lower court

---

[3] The lower court noted that Mr. Pusey's failure to agree to be bound by the results of this action in his ratification declaration was raised many times and he failed to cure it, but this is simply not true. Nowhere in the record was any such failure raised until the lower court issued its Order.

[4] The lower court could have agreed to allow Mr. Pusey to join the litigation conditioned upon another specific acknowledgement of his intent to be bound. That certainly would have addressed any concern the court had about Mr. Pusey's willingness to be bound while being consistent with the "leniency" required in addressing Rule 17. *Cortlandt St. Recovery Corp* 790 F.3d at 421.

elevated form over substance in dismissing the trademark infringement claim, which was an abuse of discretion. This is particularly true given that, even in the aftermath of the assignment, Mr. Pusey still believed that Ripple had standing to bring a trademark infringement claim because the trademark was used exclusively in support of its business and product offerings.

Finally, even if the ratification by Mr. Pusey was somehow improper, the lower court abused its discretion by not permitting the ratification of the operative pleading by Mr. Pusey to be sufficient for Rule 17 purposes. Rule 17 requires leniency to allow a real party in interest to join in these exact circumstances. *See Advanced Magnetics, Inc.*, 106 F.3d at 20 ("A Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants"). Doing so here would not only be entirely consistent with the letter and spirit of Rule 17 but would promote judicial efficiency by preserving the parties' and the lower court's resources given that the parties had already completed both fact and expert discovery and were nearing trial.

### 3. The Operative Allegations are the Same and There is No Prejudice to Rippling and No Bad Faith

Finally, Rule 17 itself does not require a party to ratify by using specific language. The purpose of Rule 17 is to ensure that the real party in interest is named and involved in the litigation for purposes of insuring that any final resolution is *res*

*judicata* and the appropriate party is so bound. *See, Cortlandt St. Recovery Corp.*, 790 F.3d at 421; *see also*, *Klein v. Qlik Tech., Inc*., 906 F.3d 215, 226 (2d Cir. 2018) ("Ensuring that an otherwise proper suit is not dismissed for want of a proper party when that party is ready and willing to join the fray is the very purpose of Rule 17(a)(3)") (internal citation omitted).Thus, substitution should be liberally granted unless there is bad faith, unfairness or prejudice to the defendant. *Klein Qlik Techs., Inc.*, 906 F.3d at 226 (citing *Advanced Magnetics, Inc.*, 106 F.3d at 120). Additionally, "'[a]lthough the district court retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of an incorrect party, there plainly should be no dismissal where substitution of the real party in interest is necessary to avoid injustice.'" *Id.* (quoting *Advanced Magnetics, Inc.*, 106 F.3d at 120).

Mr. Pusey has been involved in this litigation since its inception because he is the sole owner of Ripple. Not surprisingly, he was deposed twice in the case – in his individual capacity and as the corporate representative (for a total of 14 hours). Mr. Pusey agreed to be named as a party plaintiff. The allegations asserted in the operative pleading as asserted by Ripple are equally applicable to Mr. Pusey, and thus, the trademark infringement claim would be essentially the same, regardless of whether Ripple or Mr. Pusey is the named plaintiff. And all of the claims and defenses would involve the same operative facts, and thus, the same documents and

witnesses. As such, there was no prejudice or unfairness to Rippling by permitting Mr. Pusey to ratify the pleadings and be added as a party plaintiff under Rule 17. Indeed, the lower court acknowledged this during the hearing after the pre-motion letter and specifically stated with respect to Rippling's argument that its discovery would have been different if Mr. Pusey had been the original plaintiff, "Counsel, if you want to keep elevating form over substance, we can keep doing this, but who did you depose? Did you depose, Mr. Puce [sic]." A-212 at 8-10.

In short, it is clear that Mr. Pusey's agreement to be a party plaintiff here was sufficient to ratify the pleading. The lower court mandated something more than was required by Rule 17, elevated form over substance and effectively manufactured an issue – a refusal to be bound – by taking select statements out of context while ignoring plain and unequivocal assertions that directly contradicted its finding. The same is highly prejudicial to Mr. Pusey (and Ripple) who will then have to start from scratch to obtain redress for the same allegations and same causes of action asserted in this action.

## III. THE LOWER COURT ERRED IN GRANTING APPELLEE'S MOTION TO DISMISS PLAINTIFF'S UNFAIR COMPETITION CLAIMS UNDER FEDERAL AND NEW YORK STATE LAW WITHOUT PREJUDICE PURSUANT TO FED. R. CIV. P. 17

The lower court likewise committed reversible error when it dismissed the federal and state unfair competition claims under Rule 17. The Court can review these decisions *de novo. Alke v. Adams*, 826 F. App'x 4, 6 (2d Cir. 2020). When

reviewing the lower court's grant of a motion to dismiss, the Circuit Court accepts all well pleaded allegations in the Complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g. O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on September 11, 2001 (Asat Trust Reg.))*, 714 F.3d 659, 673 (2d Cir. 2013). Cases are properly dismissed where the Complaint cannot state any set of facts that entitle the plaintiff to relief. *Excimer Assoc. v. LCA Vision, Inc.*, 292 F.3d 134, 140 (2d Cir. 2002) ("The long-settled rule of pleading instructs 'that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'"). With respect to both the unfair business competition claim under Section 43(a) of the Lanham Act and the unfair competition claim under New York State common law, the lower court granted the Motion to Dismiss without prejudice. This was erroneous. Ripple plainly had standing to bring those claims because (1) one may be a "user" and need not be an owner of a trademark to assert a claim under 15 U.S.C. §1125(a), ("standing may lie with mere users of trademarks") and (2) Ripple is a one-person operation. It is solely owned and controlled by Mr. Pusey, and that the mark has always been exclusively and continuously used in that business as an implied licensee and has never been abandoned.

### A. The Lower Court Erred by Refusing to Recognize Appellant as a "User" of the Mark

An unfair competition claim under Section 43(a) of the Lanham Act may be brought to protect businesses against a number of deceptive and wrongful business practices. By its express terms, §1125 is available to protect infringement of both registered and unregistered marks and a proper claimant need not be a "registrant" but need only be a user. CA-274-77. Here, Ripple plainly pled - - and no party even contested - - that it was a "user" of the mark in question. As such, Ripple plainly had standing to assert claims under Section 43(a) and the lower court's determination to the contrary was mistaken. Indeed, Ripple's Complaint set forth in considerable detail the basis for its claims. It pled that the USPTO believed the Appellee's use of the name "Rippling" in a human resources related business would likely cause confusion because of Ripple's pre-existing use of the name RIPPLE® in its human resources related business. A-23 ¶ 4, A-29 ¶ 25, A-30 ¶ 29. It further pled that instead of adjudicating this issue, Appellee decided to infringe on Rippling's mark notwithstanding a likelihood of confusion that had already been recognized by the USPTO. A-24. These facts not only make out clear standing, but also an unfair competition claim insofar as Ripple has properly pled a likelihood of confusion. *B&B Hardware v. Hargis Indus.*, 575 U.S. 138, 144-45 (2015) ("Court must decide whether the defendant's use of a mark in commerce 'is likely to cause confusion or to cause mistake or to deceive' with regard to the plaintiff's mark") (citations

-43-

omitted). Thus, there was no basis for the lower court's determination that anything was missing from these allegations such that the Complaint needed to be dismissed.

Despite the above, the lower court dismissed the claims, albeit with leave to move to serve an amended complaint. The lower court found:

> None of the allegations support plaintiff's new-found notion that its standing derives solely from its usage of the mark distinct from its alleged ownership. Indeed, even with the record before the Court, the nature of plaintiff's right to such use remains speculative and inscrutable.

SPA-9.

Considering the record as a whole, there was nothing "speculative" or "inscrutable" about Ripple's right to use the mark. Indeed, its rights could not be more clear. Appellant was a corporation wholly-owned at all relevant times by Mr. Pusey. Ripple's use of the mark was at all times with the full knowledge and permission of Mr. Pusey – who again was the sole owner and chief executive of Appellant.

More importantly, the lower court's focus on the supposed "nature of plaintiff's right" to use the mark conflicted with the standard for determining standing under Section 43(a). This Court held in *Berni v. Int'l Gourmet Rests. of Am., Inc.*, 838 F.2d 642, 645 (2d Cir. 1988), that "at a minimum, standing to bring a section 43 claim requires the potential for a commercial or competitive injury." Appellant, which utilized the mark in commerce for many years with the permission

of Mr. Pusey, unquestionably met that standard. Thus, the dismissal of the claim was in error.

### B. Appellee's Bad Faith is Sufficient to Sustain the New York Unfair Competition Claim

Similarly, Appellant stated a claim for unfair competition under New York State common law. New York's common law unfair competition claim tracks the requirements of the Lanham Act, only with an additional requirement of bad faith. *Ellington v. Harbrew Imports Ltd.*, 812 F.Supp.2d 186, 192 (E.D.N.Y. 2011) ("Unfair competition claims under New York common law are governed generally by the same standards as Section 43(a) of the Lanham Act, except the common law requires a showing of bad faith or intent"). Ripple, which was a "user" of the mark, pled that Appellee aggressively proceeded with its plan to use Rippling for its human resources related business even after it learned that the USPTO deemed it to be unlikely to cause confusion with the RIPPLE® mark. These facts, without more, are sufficient to make out a claim for a common law unfair competition. The lower court's determination that this claim needed to be dismissed, even without prejudice, was therefore baseless and should be overturned.

### IV. THE LOWER COURT'S RULING ON RIPPLE'S MOTION FOR LEAVE TO AMEND APPLIED THE INCORRECT STANDARD AND MISCONSTRUED APPLICABLE LAW

The Report & Recommendation denying Appellant's motion for leave to file an amended complaint under 15 U.S.C. §1125(a) and New York common law unfair

competition, adopted by the lower court, was rife with legal errors. The R&R found that Appellant had no colorable unfair competition claims because it had not provided "proof of a proprietary right." But such proof is not required under Section 43(a) of the Lanham Act or New York State common law. The lower court also failed to recognize that Appellant stated a valid claim under both federal and state unfair competition laws as a "user" of the mark and ignored that Appellant properly pled it was an implied licensee of the mark, which conveyed standing. Because the denial was based on the erroneous legal finding that a user must maintain a "propriety interest" in the trademark to have standing, the standard of review is *de novo*. *Sissel*, 519 F. App'x at 14.

### A. The R&R Erroneously Required a "Proprietary Right," Effectively Applying the Standing Requirement of Section 32 Rather Than Section 43(a) of the Lanham Act

The R&R concluded that Ripple had no legitimate basis for bringing this case as a "mere user" in the absence of proof of "ownership of a proprietary right," and that the claim lacked the "specificity" to establish standing. As the R& R stated:

> While Ripple is correct that it need not own the trademark to assert the unfair competition claim, it must nonetheless have a proprietary right to use the trademark. However, it is clear from the record that the proprietary right to use the trademark remains Pusey's … Accordingly, the Court finds that Ripple's proposed federal unfair competition claim, which is now based on the fact that it had permission to use the trademark, still lacks the specificity required to establish standing.

-46-

A-330.

Thus, the R&R found that despite Ripple having had longstanding and continuous permission to use the mark exclusively granted by its 100% owner, Mr. Pusey, Ripple did not have a sufficient "right" to pursue this claim. This finding was based on an earlier misapplication of the law in the July 26 Order, which found that Appellant somehow lacks standing to bring federal unfair competition claims because the "Assignment and Assumption agreement confirms that Ripple not only lacks ownership of the trademark but also lacks the right to any claims based on the trademark, any ownership of the rights to settle or release such claims; and ownership of 'remedies associated therewith." A-330.

Courts in this Circuit have long applied a different standard than the lower court applied. Under Section 43(a), a permitted user of a mark may bring a claim to remedy a competitive injury arising from another's use of a confusingly similar trademark. *See* Section I *supra*. Only Section 32 of the Lanham Act requires any sort of proprietary right or ownership interest in the mark at issue to allege standing. *See, e.g. Shandong Shinho Food Indus., Co., Ltd. v. May Flower Int'l, Inc.* 521 F. Supp. 3d 222, 245, 247 (E.D.N.Y. 2021) (noting difference in standing requirement between Section 32 and Section 43(a) claims; *RBCI Holdings, Inc.*, 2008 U.S. Dist LEXIS 26122, at *9-12 (plaintiff, who had no rights of ownership and no right to sue to protect ownership interest in a mark, could pursue its claim that defendant was

improperly using the mark in a way that is likely to cause confusion in the marketplace under Section 43(a)); *Calvin Klein Jeanswear Co. v. Tunnel Trading*, No. 98-Civ-5408 (THK), 2001 U.S. Dist. LEXIS 18738, at *18 (S.D.N.Y. Nov. 16, 2001) (Permitted user of the mark, who had no right to sue to protect against infringement of ownership and thus could not bring a Section 32 claim, had standing to bring a Section 43(a) claim).

While the R&R recognized that "the question of ownership is immaterial to standing under § 43(a), since standing may lie with mere users of trademarks," A-329, Judge Lindsay nevertheless stated a party is additionally required to show "the proof of a proprietary right," and some sort of "specificity," noting that Judge Brown found that the claims require a "reasonable interest to protect, which some courts have characterized as a commercial interest." A-329-30. These vague assertions, as applied in this case, certainly appear to have altered the settled standard for determining who has standing under Section 43(a) therefore misapplying the law. As this Court held in *Berni*, 838 F.2d at 645, "at a minimum, standing to bring a section 43 claim requires the potential for a commercial or competitive injury" -- not a "proprietary interest." Further, the R&R neglects to articulate what "proof of ownership of a proprietary right" means, or what would be sufficient under the law, yet penalizes Appellant for not articulating it. *See* A-329-30; A-330 ("Ripple has done little to explain the nature of that alleged proprietary right").

In any event, Appellant plainly pled and demonstrated that it has "potential for a commercial or competitive injury," and that it has a "commercial interest" to protect. Appellant is the company that uses the mark in commerce and has been doing so for several years, and thus has a substantial a pecuniary interest at stake. Asa a result, even under this mistaken articulation of relevant law, has standing to bring each of the unfair competition claims. *PPX Enters. v. Audiofidelity, Inc.*, 746 F2d 120, 125 (2d Cir. 1984) ("We stress that there is nothing novel about awarding standing under the Lanham Act to one who has a direct pecuniary interest at stake").[5]

### B. The R&R Failed to Recognize Appellant's Standing as an Implied "Licensee"

Once again, a party may be a "user," and need not be an owner, of a trademark to assert a claim under 15 U.S.C. § 1125(a): "standing under this section may lie with users of trademarks who are not owners of the marks." *Silverstar Enters. Inc. v. Aday*, 537 F. Supp. 236, 241 (S.D.N.Y. 1982). At the same time, a trademark

---

[5] In fact, Appellant set forth (A-240-60) in its papers, including its amended complaint ( A-263-80) the myriad bases demonstrating its protectable interest in the RIPPLE mark under the relevant law, including: (1) it is the first, continuous, exclusive and permitted user and controls the mark, and would be treated as a licensee (*Calvin Klein Jeanswear Co.*, 2001 U.S. Dist. LEXIS 18738, at *18 ("Courts have consistently recognized that this broad language [of 15 U.S.C. §1125(a)] confers standing on trademark licensees")). (A-252-54); consumers have been and are likely to be confused by the infringing mark (A-254); that injury is presumed to flow from a likelihood of confusion over source, sponsorship, affiliation or connection (*id.*); and that provable damage is not required to establish a *prima facia* case (*id.*).

owner is permitted to license the use of the mark to others, and a trademark license may be implied by conduct. *McCarthy on Trademarks and Unfair Competition* §18:43.50 (5th ed.); *Villanova Univ. v. Villanova, Alumni Educ. Foundation Inc*., 123 F. Supp. 2d 293, 307 (E.D. Pa. 2000) (a license is implied where there is "permission to use the trademarks coupled with the exercise of reasonable control over such use"); *accord*, *D.H. Pace Co. v. OGD Equip. Co., LLC,* No. 22-10985, 2023 WL 5362854, at *4-5 (11th Cir. Aug. 22, 2023) (licensee has standing to bring an unfair competition claim); *Phyllis Schlafly Revocable Trust v. Cori,* No. 4:16-cv-01631-JAR, 2022 WL 898760, at *4 (E.D. Mo. Mar. 28, 2022) (same); *Hotaling & Co., LLC v. LY Berditchev Corp*., No. 20-cv-16366, 2021 WL 3783260, at *4 (D.N.J. Aug. 26, 2021) (*citing Calvin Klein* and concluding licensee has standing if it shows confusion resulting from trademark use). It is well established under the Lanham Act that the "zone of interest" which qualifies for protection under the Act includes injury to a licensee from confusion brought on by a competitor's wrongful use of a similar mark. *See e.g. Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

Here, the record clearly demonstrates -- and Appellant pled in its proposed amended complaint -- that Appellant, which is owned and controlled Mr. Pusey, operates as the business in which the RIPPLE mark was developed and being used. A-22 ¶¶2, 5, 13; A-264 ¶¶ 2, 6, 14; CA-642 ¶¶ 1-4; A-388 pp. 169:2-7-170:2-6.

Appellant in fact is the exclusive, permitted user of the mark. CA-642 ¶¶1-4, 17; A-388 p. 128. There are no third parties licensing the RIPPLE mark; rather, third parties are licensing "the Ripple software" from Appellant. A-388 p. 124:5-8 ("licenses to the Ripple platform").

Courts in this Circuit again have consistently recognized that a licensee of a trademark has standing to bring a Section 43(a) claim.[6] And Appellant set forth the basis upon which it has standing under 43(a) as an implied "licensee." A-254-55. In particular, Appellant pled, and demonstrated, that because it is the exclusive permitted user and implied licensee of the RIPPLE mark, it has standing to pursue a Section 43(a) false designation of origin claim, because Appellee's use of RIPPLING is likely to cause confusion with Appellant and its business, which has been operating and developing goodwill as RIPPLE since 2015. A-252-56. And by setting forth the precise relationship between Ripple and Mr. Pusey as well as Ripple's long history of utilizing the mark, the pleading certainly satisfied any purported "specificity" requirement.

---

[6] *See RBCI Holdings, Inc.*, 2008 U.S. Dist. LEXIS 26122, at *10 ("One need not be the 'owner' or 'registrant' of a trademark to sue for infringement under §43(a)"); *McCarthy on Trademarks and Unfair Competition* §27.21 (5th ed.) (same); *Calvin Klein Jeanswear Co.*, 2001 U.S. Dist. LEXIS 18738, at *18 ("Courts have consistently recognized that this broad language [of 15 U.S.C. §1125(a)] confers standing on trademark licensees"); *Shandong Shinho Food Indus., Co., Ltd.*, 521 F. Supp. 3d at 245, 247 (finding that a licensee, which did not have rights of an assignee, had standing to bring a Section 43(a) claim but not a Section 32 claim); *Nespresso USA, Inc. v. Peet's Coffee, Inc*., No. 22-cv-02209 (CM), 2023 WL 374980, at *13 (S.D.N.Y. Jan. 24, 2023) (permitting licensee, which did not have rights of an owner or assignee, to sue for trademark infringement under Section 43(a)).

The R&R, however, questioned the existence of any license, stating:

> Ripple has not cited to any documents evidencing the terms of the alleged "exclusive license" entered between Pusey and the company. In fact, in Rule 56.1 Counterstatement, Ripple stated that a licensing agreement has never existed between Pusey and Ripple with respect to the trademark. Nor has Ripple ever licensed the trademark in return for the payment of a royalty.

A-330.

This completely misses the mark. The record does reflect that no formal license agreement existed between Mr. Pusey and Ripple and no royalty was ever paid. There is no reason why Mr. Pusey would enter into a formal license agreement or obtain royalties from any company of which he was the 100% owner. And in fact, "implied licenses" are often, understandably, found to exist between affiliated parties. *See Villanova Univ.* 123 F. Supp. 2d at 307 (finding implied trademark license existed between university and its alumni association); *Birthright v. Birthright, Inc.*, 827 F. Supp. 1114 (D. NJ 1993) (implied license found to exist between affiliated organizations); *United States Jaycees v. Phila. Jaycees*, 639 F.2d 134 (3d Cir.1981) (finding implied license existed between national and local Jaycees organizations). Whether or not an implied license existed is an issue of fact that could not be decided on a motion for leave to file an amended complaint. *Jose Luis Pelaez, Inc. v. McGraw-Hill Global Educ. Holdings LLC*, 399 F. Supp. 3d 120 (S.D.N.Y. 2019).

In any event, neither a license nor a "proprietary interest" is required to establish standing under Section 43(a). All that is required is the possibility of "commercial or competitive injury," which clearly exists here.

The proposed amended complaint satisfied the other pleading requirements for a Section 43(a) claim. Because a Section 43(a) claim utilizes the same standard for trademark infringement, a plaintiff must first demonstrate that "the mark is entitled to protection" (*Calvin Klein,* 2001 U.S. Dist. LEXIS 18738, at *22) under the "Polaroid" factors. *Tiffany & Co. v. Costco Wholesale Corp*., 971 F.3d 74, 84 (2d Cir. 2020); 2 Gilson on Trademarks § 8.03[7]. Once that is established, the plaintiff must show that ordinary purchasers are likely to be confused as to the source of the product. *Id*. at *24. Appellant in fact pled each of these factors, although no analysis of these factors appears in the R&R. *Compare* A-252-56, 309-13 *with* A-326-31. The R&R provides no *Polaroid* analysis and did not address the likelihood of consumer confusion[7], or Appellee's bad faith.

---

[7] With respect to determining whether the use of a mark by defendant will cause confusion, courts look to the following factors…: (1) the strength of the plaintiff's mark; (2) the similarity of the marks; (3) the competitive proximity of the products in the marketplace; (4) the likelihood that the senior user will 'bridge the gap' by moving into the junior's product market; (5) evidence of actual confusion; (6) the junior user's bad faith in adopting the mark; (7) the respective quality of the products; and (8) the sophistication of the consumers in the relevant market.'" *Van Praagh v. Gratton*, 993 F.Supp. 2d 293, 301 (E.D.N.Y. 2014) (citing *Polaroid corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).

The R&R undertook none of the requisite analysis under the law governing unfair competition claims under the Lanham Act before deciding that Appellant's claim was futile, which was error. *Twentieth Century Fox Film Corp. v. Marvel Enters.*, 277 F.3d 253, 260 (2d Cir. 2002) ("Trademark licensees have been permitted to sue competitors under section 43(a)"); *Mastercard Intl., Inc. v. Sprint Communs. Co.*, No. 94 Civ. 1051 (JSM), 1994 U.S. Dist. LEXIS 3398, at *8 (S.D.N.Y. Mar. 23, 1994) ("[Because] § 1125(a) allows suit by any person who . . . is likely to be damaged by . . . false description or representation"). There is no question that an exclusive licensee such as Mastercard has standing here. Thus, the trial court erred in adopting the R&R's recommendation regarding Section 43(a) and should be reversed.

### C.     Ripple Has Standing to Bring a State Unfair Competition Claim

New York common law has adopted the same elements for unfair competition claims as the Lanham Act but requires an additional showing of bad faith on the part of the defendant. *Ellington*, 812 F. Supp. 2d at 192.

The R&R, found that "for the same reasons [as Section 43], the undersigned recommends that Ripple's motion be denied to the extent it seeks to assert a New York common law claim for unfair competition." A330-31. Thus, the R&R also applied the improper "proprietary interest" and "specificity" standard to Appellant's

common law claim, but additionally, failed to evaluate the significant evidence of Appellee's bad faith.

For instance, Appellee deliberately chose to operate under the name RIPPLING, with full knowledge of RIPPLE, despite the USPTO raising the confusing similarity of the marks. at A-264 ¶¶ 27-28; CA-810 ¶¶ 31, 32, 36-38. Then, after receiving notice from the USPTO, Appellee abandoned the registration process altogether without even attempting to resolve the issue with Appellee or the USPTO. A-264 ¶¶ 28-29; CA-809 ¶ 33. Appellee also insisted in this litigation that its business was different from Appellant's, and since then has expanded its business to copy Appellant's concept of using employee surveys to get feedback. A-264 ¶31; Sullivan Letter A-249-50, 56.[8] These allegations are sufficient to allege bad faith, as the court found in *Thursday, LLC v. DNVB, Inc.,* 20 Civ. 9142, 2021 U.S. Dist. LEXIS 121634, at *12-13 (S.D.N.Y. June 29, 2021) (finding bad faith demonstrated where defendant was using the marks "despite the USPTO's refusal to register the mark due to the likelihood of confusion"). The R&R and subsequently trial court (in adopting the R&R) erred in failing to consider Appellee's bad faith.

---

[8] Appellee added the "Rippling Pulse" feature to its website, stating: "Introducing Rippling Pulse: the easiest way to survey your employees and analyze their feedback." A-264 ¶31. Appellee provided no documents about the launch of this business in discovery A-249 despite admitting it had been planning "Rippling Pulse" at least five months before the close of discovery. A-249 at n. 3.

Further, these allegations are sufficient to state a claim for unfair competition under New York law and therefore the claim is not futile. *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 150 (2d Cir. 2007) ("intention is always a subjective matter of inference and thus rarely amenable to summary judgment") (citations omitted). Accordingly, Appellant has a colorable claim for unfair competition under New York state law, the motion to amend should have been granted and the lower court should be reversed.

## CONCLUSION

For all of the reasons above, this Court should reverse the District Court's Judgment in its entirety and remand this action to the District Court for further proceedings.

Dated:     August 9, 2024

**WHITE AND WILLIAMS LLP**

  /s/Nicole A. Sullivan
Nicole A. Sullivan, Esq.
Thomas E. Butler, Esq.
7 Times Square, Suite 2900
New York, New York 100306
212. 631.4420
sullivann@whiteandwilliams.com
butlert@whiteandwilliams.com
*Attorneys for Appellant Ripple Analytics Inc.*

-56-

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE
## OF APPELLATE PROCEDURE 32(a)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 13,998 words. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in the Times New Roman font, size 14.

Dated:     August 9, 2024

**WHITE AND WILLIAMS LLP**

      /s/Nicole A. Sullivan
Nicole A. Sullivan, Esq.
Thomas E. Butler, Esq.
7 Times Square, Suite 2900
New York, New York 100306
212. 631.4420
sullivann@whiteandwilliams.com
butlert@whiteandwilliams.com
*Attorneys for Appellant Ripple Analytics Inc.*

# SPECIAL APPENDIX

i

**SPECIAL APPENDIX
TABLE OF CONTENTS**

|  | Page |
|---|---|
| Memorandum and Order, dated July 26, 2023 .......... | SPA-1 |
| Judgment, dated February 5, 2024............................ | SPA-13 |

SPA-1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
RIPPLE ANALYTICS INC.,

               Plaintiff,

        -against-

PEOPLE CENTER, INC. d/b/a RIPPLING,

               Defendant.

----------------------------------------------------------------X
PEOPLE CENTER, INC. d/b/a RIPPLING,

               Counterclaimant,

        -against-

RIPPLE ANALYTICS INC.,

               Counterclaimant-Defendant.

----------------------------------------------------------------X

**FILED**
**CLERK**
3:52 pm, Jul 26, 2023
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

<u>**MEMORANDUM AND ORDER**</u>

20-CV-894 (GRB)

**GARY R. BROWN, United States District Judge:**

       Rarely in civil litigation is a case dismissed for failure to join a "real party in interest" under Rule 17(a) of the Federal Rules of Civil Procedure, mainly because that rule encompasses generous remedial procedures which allow litigants to remedy any error through ratification, joinder or substitution within a "reasonable period." *See* FED. R. CIV. P. (a)(3). Of course, these procedures cannot help a litigant who fails or refuses to properly invoke them. In this case, despite numerous objections by defendant since 2021, inquiry by the Court and repeated representations made by plaintiff's counsel, the plaintiff, which no longer owns the trademark in question, the associated goodwill or any claims made in this action, has failed to effectively remedy this defect. As such, defendant's motion to dismiss under Rule 17 is – surprisingly – meritorious and, for the reasons that follow, is granted.

SPA-2

*Background*

   This action was commenced via the filing of a complaint in February 2020 by plaintiff Ripple Analytics Inc.  Docket Entry ("DE") 1.  In sum and substance, the complaint purports to set forth claims for trademark infringement and unfair competition, the latter theory arising under both state and federal law.  *See generally id.*  The allegations state that plaintiff owns a registered federal trademark (U.S. Reg. 5,430,908), issued in March 2018, for the use of the word "RIPPLE" in connection with human-resources related software and complains of alleged infringement by defendant for its use of "RIPPLING" in relation to a similar product.  *Id.* ¶¶ 1-6.

   The complaint, repeatedly and unequivocally, alleges that "Plaintiff owns all right, title and interest in and to the RIPPLE® mark."  *Id.* ¶¶ 31, 50; *cf.* ¶¶ 1, 6, 24, 25, 29, 33, 40, 44 (references to "Plaintiff's RIPPLE® mark").  During litigation, these allegations transmuted into sworn evidence: for example, Noah Pusey, plaintiff's CEO and principal shareholder, testified at one point that "Ripple Analytics owns [the trademark]."  DE 89-3 at 5.[1]  The problem with these allegations, along with other representations made by plaintiff throughout this litigation, is that they are blazingly untrue.

   The undisputed facts demonstrate that via an Assignment and Assumption Agreement entered in April 2018, Ripple assigned all of its interests in any intellectual property, including trademarks, associated goodwill, and all claims emanating therefrom, to Pusey.  DE 89-6; DE 89-7.  In its responsive Rule 56.1 statement, counsel for Ripple acknowledges that Ripple's "intellectual property, assets and liabilities was [sic] assigned and assumed by Mr. Pusey."  DE 89-9 ¶¶ 1, 19-22.

---

[1] At a Rule 30(b)(6) deposition of plaintiff, counsel invoked privilege and instructed the witness not to answer questions about whether Ripple had assigned interests in this lawsuit to others.  DE 89-5 at 6:21-25, 7:1-11.

SPA-3

The issue was first raised by defense counsel by way of a proposed amended answer and counterclaim in late 2021.  DE 89-10 at 2; DE 84.  Counsel for plaintiff swiftly responded that "any issue concerning standing is easily cured by adding Noah Pusey as a party-plaintiff in accordance with Fed. R. Civ. P. 17 (a)(3).  DE 89-11 at 2.  Counsel repeated this assertion in subsequent correspondence.  DE 89-12 at 2.  Yet, no request has been made to effect joinder or substitution of Mr. Pusey.  About a month later, in an affidavit opposing the amended answer, Mr. Pusey stated the following via affidavit in a purported effort at ratification:

> 6. I have been overseeing and participating in all legal proceedings in this matter from the beginning.  I have read the complaint and am fully familiar with all of the allegations in the complaint.  Any judgment obtained in this or any case pursuing the interests of Ripple will be for my sole benefit; therefore I have a very strong interest in the outcome of this case.
>
> 7. A true and accurate copy of the complaint in this action, filed February 19, 2020 is attached hereto as Exhibit 3.
>
> 8. By this Declaration, I ratify all of Plaintiff's allegations in this case and each cause of action alleged. As a real party in interest, I am prepared to step in immediately as Plaintiff.

DE 89-15 at 3.   Importantly, nowhere in that document, *id.*, nor in the reams of filings in this matter, did Mr. Pusey aver that he would be bound by the Court's rulings.  And no effort has been made to have Pusey "step in immediately as Plaintiff."

And it wasn't for lack of opportunity.  During a pre-motion conference, the Court asked counsel, "Are you prepared to substitute Mr. Pusey in for the company as plaintiff?"  DE 85 at 12:6-7.  Counsel's response was a dissembling fusillade, during which no affirmative response was provided.  *See id.* at 12-17.

Defendant now moves for dismissal under Rule 17, or in the alternative for summary judgment, principally based upon the failure to join Pusey, the real party in interest in the litigation.

This opinion follows.

SPA-4

*Discussion*

*Trademark Infringement Claim*

"An action must be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17. Who is the real party in interest? The Circuit has held that "ownership of the relevant trademark is one of the 'necessary elements . . . of trademark infringement under the Lanham Act.'" *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 623 F.3d 61, 70 (2d Cir. 2010) (quoting *Island Software & Computer Serv., Inc. v. Microsoft Corp*., 413 F.3d 257, 259–60 (2d Cir. 2005)). Notably, "federal courts may, applying the relevant law, adjudicate the ownership of a trademark as part of an infringement claim." *Id.* Certainly, then, at least regarding the trademark infringement claims, Pusey undeniably owns the mark (notwithstanding allegations, representations and testimony suggesting otherwise) and is the real party in interest.

On this motion, counsel for plaintiff continues to advocate for Ripple's ownership of the mark,[2] employing a logic befitting *Alice in Wonderland*.[3] Consider the following argument drawn from plaintiff's brief:

> [T]he purported "assignment" agreement as executed by Mr. Pusey for both parties (individually and as Ripple's owner-CEO) did not and was not intended to transfer the legal ownership of the trademark to Mr. Pusey. The legal ownership of the mark always remained with Ripple, and thus, Ripple is the real party in interest with standing to bring each and every claim.

DE 88-7 at 8. Meanwhile, the terms of the assignment agreement entered between plaintiff and Pusey provides that:

> Ripple hereby assigns, conveys and transfers to Assignee (the "***Assignment***"), and Assignee does hereby accept the Assignment of, all right, title and interest in and to the Covered IP, [including trademarks].

---

[2] Plaintiff's counsel contends that defendant's motion argument based upon ownership of the subject trademark "is nonsensical, frivolous and waste of all parties' and this Court's time." DE 89-21 at 27. That description aptly applies to some arguments made on this motion, just not those made by defendant.

[3] "If I had a world of my own, everything would be nonsense. Nothing would be what it is, because everything would be what it isn't. And contrary wise, what is, it wouldn't be. And what it wouldn't be, it would. You see?" ALICE IN WONDERLAND (Walt Disney Productions 1951).

4

SPA-5

DE 89-6 at 3.  The accompanying Bill of Sale and Assignment indicates that Ripple:

> has agreed to sell, assign and transfer to Buyer all of Seller's right, title and interest in and to the assets described on Exhibit A, [which includes]:
>
>> 2. Trade name rights to Ripple Analytics . . . registered and unregistered
>> 3. US Trademark Registration No. 5,430,908 . . .
>> 4. All trademarks . . . registered and unregistered

DE 89-7 at 2,3.  The undisputed terms of these agreements belie plaintiff's argument that "the parties never intended to assign the mark."  *See* DE 89-21 at 12.

Plaintiff would have the Court rewrite the agreements it entered with Pusey, something that this Court cannot and will not do for several reasons: (1) the agreements are not at issue in this litigation; (2) Pusey is not a party and (3) preliminary review of the agreements suggests that the terms are unambiguous, rendering the issue of intent beyond the purview of legal review. Similarly untethered from reality is plaintiff's argument that the Court should disregard the assignment as ineffectual based on the principle that "trademark rights cannot be assigned without also assigning the goodwill and operation of the business in which the mark is used."  DE 89-21 at 7; *cf. id.* at 17 ("the mark could not be assigned to Mr. Pusey without the accompanying business and its goodwill").  But the agreement expressly assigns all assets of the business, including goodwill associated with the trademark, to Pusey.  DE 89-6 at 2 ("all of Ripple's right, title and interests in all assets and properties"); *id.* at 3 ("all trademarks . . . together with the goodwill symbolized"); DE 89-7 at 3 ("All goodwill and going concern value").

Thus, Pusey is inarguably the real party in interest.  *See Fed. Treasury Enter.*, 726 F.3d at 75 ("only the owner of the trademark is entitled to sue for its infringement"). The failure to include Pusey as a party, though, could have been readily cured.  Rule 17(a)(3) provides as follows:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the

> real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

FED. R. CIV. P. 17(a)(3). This provision was "intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." *Id.* advisory committee's note to 1966 amendment. Thus, when a party acts with reasonable dispatch to correct such an error, all is forgiven. "If a party successfully moves for ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 421 (2d Cir. 2015).

In contrast to the hypothetical situations envisioned by the Rule, here, determining who owned the trademark and the resultant claims given the specificity of the agreements entered by plaintiff was not difficult, nor can one really argue that there was an "understandable mistake." Indeed, this case much more closely resembles a situation "where there was no semblance of any reasonable basis for the naming of an incorrect party." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997). Nevertheless, plaintiff acknowledged awareness of the proper remedial steps and was provided ample opportunity, numerous reminders and more than a year to correct the error, but simply failed or refused to do so. For example, during the pre-motion conference, plaintiff's counsel declined the Court's invitation to remedy the pleading deficits by substituting or joining Pusey as a plaintiff. DE 85 at 12:8-23.

Counsel's exclusive reliance upon Pusey's ostensible "ratification' of the suit proves misplaced. The Second Circuit has held that to ratify a suit, "the real party in interest must (1) authorize continuation of the action and (2) agree to be bound by its result." *Fed. Treasury Enter.*, 726 F.3d at 83. Nowhere in his affidavit does Pusey satisfy the second condition of this

straightforward requisite.  Though the supposed ratification was filed more than a year ago, and the deficit has been pointed out numerous times, counsel made no effort to supplement this ineffectual submission.  And, in this instance, the omission is not without consequence.  In a pre-motion letter submitted in March 2022, counsel for Ripple relied upon Pusey's purported ratification of the suit, but added:

> [I]f Rippling's legal position were correct, it would simply lead to a dismissal of Ripple's action and the immediate filing by Pusey of the exact same claims against Rippling resulting in the parties starting the process from scratch.

DE 69 at 2.  Therefore, Pusey's failure to acknowledge that he would be bound by the decision of this Court proves significant given that counsel has already threatened to file an identical suit.  Such unfairness to the defendant, which invested heavily in this litigation and had to painstakingly unearth the trademark ownership issues, cannot be condoned.

*Ripple's Standing to Pursue 15 U.S.C. §1125(a) Claim*

Counsel for plaintiff argues that, even absent ownership of the trademark, Ripple has standing to pursue its second cause of action, entitled "federal unfair competition" pursuant to 15 U.S.C. § 1125(a).  Plaintiff seeks shelter in the broad statutory language of that section, which provides that an action may be brought by "any person who believes that he or she is likely to be damaged" by, among other things "any false designation of origin."  *Id.*  In another exemplar of tortured logic, counsel argues that "if Mr. Pusey is 'not using' the mark and Ripple does not have 'license to use,' Ripple must be the party actually using the mark," and hence has standing to bring a § 1125(a) claim.  DE 89-21 at 27.

Despite the broad language of the statute, the United States Supreme Court has construed the statute far more narrowly, noting that "a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked."  *Lexmark Int'l, Inc.*

*v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (cleaned up) ("Read literally, that broad language might suggest that an action is available to anyone who can satisfy the minimum requirements of Article III…. [T]he unlikelihood that Congress meant to allow all factually injured plaintiffs to recover persuades us that § 1125(a) should not get such an expansive reading."). And, of course, it is incumbent upon plaintiff to allege and prove standing as an element of its case:

> Our cases have established that the "irreducible constitutional minimum" of standing consists of three elements. *Lujan*, 504 U.S., at 560, 112 S.Ct. 2130. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id.,* at 560–561, 112 S.Ct. 2130; *Friends of the Earth, Inc.*, 528 U.S., at 180–181, 120 S.Ct. 693. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Where, as here, a case is at the pleading stage, the plaintiff must "clearly ... allege facts demonstrating" each element. *Warth*, *supra*, at 518, 95 S.Ct. 2197.

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

According to the complaint, plaintiff's standing to bring an § 1125(a) claim emanates from the allegation that "Plaintiff owns all right, title and interest in and to the RIPPLE® mark, U.S. Reg. 5,430,908," DE 1, ¶ 31, which plaintiff now acknowledges is factually false. The claim specifies that the acts complained of "constitute infringement of Plaintiff's RIPPLE® mark under 15 U.S.C. § 1114(1)" and that "Plaintiff has suffered and continues to suffer damage to its trademark rights, business reputation and goodwill." *Id.* ¶¶ 33, 34. Indeed, during the pre-motion conference, plaintiff's counsel—who substituted for the attorneys that filed the case—acknowledged the pleading problem:

> **The Court:** It looks to me like there was some sloppy drafting by somebody, I don't know who, [in] that the wrong party is named.[ ]

> **Mr. Williams:** [ ] We weren't the ones who drafted the complaint but yes, there was sloppy drafting on their part.

DE 85 at 7:4-7, 13:16-18.

8

None of the allegations support plaintiff's new-found notion that its standing derives solely from its usage of the mark distinct from its alleged ownership.  Indeed, even with the record before the Court, the nature of plaintiff's right to such use remains speculative and inscrutable.  On this motion, plaintiff's counsel states the following in a footnote regarding those purported rights:

> Other than the reorganization documents, there are no written agreements as to the use of the mark – its use was unchanged and remained with Ripple. The parties believe that Ripple was and continues to be the owner of the business and its associated mark and the "registrant" on the USPTO register. The parties did not record any assignment, which is consistent with their view that Ripple is the owner.  But, even if the court were to conclude that Mr. Pusey was assigned the mark in a way that is valid, it would have to account for the continued use by Ripple as based on some other arrangement.  Any such arrangement, whether as an assignment or license back or as co-owners, would maintain the priority of the mark due to the related party attribution rule.[4]

DE 89-21 at 29, n.11.  The law requires that a plaintiff articulate its basis for asserting standing in properly filed allegations.  The Court cannot substitute such indefinite marginalia for the admittedly false allegations of trademark ownership.   Neither the Court nor the defendant can or should be expected to rely on prognostication to identify the basis for plaintiff's claim.

Thus, plaintiff's § 1125(a) claim is dismissed based upon a failure to properly allege standing.

*Plaintiff's State Law Unfair Competition Claim*

Plaintiff's third cause of action for unfair competition sounds in New York common law and is before this Court under the aegis of pendent jurisdiction. DE 1, ¶¶ 9-10; 28 U.S.C. § 1367(a). In certain instances, where dismissal of the federal claims is based upon a lack of subject matter jurisdiction (or are wholly insubstantial), which might be said of this case, the Court cannot

---

[4] Notably, counsel's reference to what "the parties believe" appears to refer not to the parties to this case, but rather to plaintiff and Mr. Pusey, who remains a non-party.  It bears repeating that this prattle appears in the brief for *plaintiff*, as one might expect otherwise.

exercise supplemental jurisdiction over pendent claims.   *Cangemi v. United States*, 13 F.4th 115,

134 (2d Cir. 2021) ("a district court cannot exercise supplemental jurisdiction unless there is first

a proper basis for original federal jurisdiction.").   Otherwise, as this Court has previously held:

> Pursuant to 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction over" state law claims if, as here, "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); *see Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014).  "Dismissal of the state law claims, however, is not absolutely mandatory, and the authority of whether to retain or decline jurisdiction resides in the sound discretion of the Court."  *Cinevert v. Varsity Bus Co.*, 2014 WL 4699674, at *3 (E.D.N.Y. Sept. 22, 2014); *see Delaney*, 766 F.3d at 170.  "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity — the '*Cohill* factors.'"  *Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988)); see *Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010) ("[I]f a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well.").

*Espinosa v. Nassau Cnty. Corr. Ctr.*, No. 20-CV-00223 (GRB), 2021 WL 826168, at *3 (E.D.N.Y.

2021).  Even assuming this Court has discretion to exercise such jurisdiction, given that the Court

has not dealt with the substance of this action in any significant way, and the federal claims are

being dismissed well before trial, the factors weigh against such exercise.  Therefore, the third

claim is dismissed.

*Nature of the Dismissals*

The only remaining question is whether the dismissals herein are with prejudice to

repleading or refiling.  Defendant argues for dismissal with prejudice,[5] considering the false

---

[5] Defendant's request that the Court prevent Pusey from attempting to join this case or filing another, as well as plaintiff's various requests that the Court adjudicate certain of Pusey's rights, are not properly before this Court, as Pusey is not a party to this action.

statements proffered by plaintiff as well as the failure or refusal to correct the standing deficits notwithstanding the passage of several years of litigation.  As to plaintiff, while counsel has failed to request leave to replead, the papers, at least implicitly, raise the issue.  *See* DE 89-21 at 24.

The standard for permitting amendment, leave for which is generally freely granted, is well known.  "[G]ranting or denying such leave is within the discretion of the district court, leave to amend will generally be granted unless: (1) there is evidence of undue delay, bad faith, dilatory motive, or repeated failures to cure deficiencies by amendments previously allowed; (2) allowing amendment would cause undue prejudice to the opposing party; or (3) the amendment would be futile."  *Morales v. Valley Stream Union Free Sch. Dist. 24*, No. 18-3897 (SJF) (AYS), 2019 WL 5874136, at *5 (E.D.N.Y. Aug. 14, 2019), *adopted by* 2019 WL 4253975 (E.D.N.Y. Sept. 9, 2019) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Defendant argues both undue delay and undue prejudice, and the argument is not without merit.  Moreover, plaintiff's failure to provide a proposed amended complaint further militates against granting leave.  Nevertheless, the Court will consider the question of futility.

It is beyond peradventure that any attempt to revive the trademark infringement claim as to Ripple Analytics would be futile, as the undisputed facts demonstrate that plaintiff is not the owner of the trademark, a critical element of a trademark infringement claim.  Thus, the first claim is dismissed with prejudice as to plaintiff.

The record as to the second claim under 15 U.S.C. § 1125(a) remains sufficiently opaque such that the Court cannot determine whether repleading on behalf of Ripple would be futile.  Thus, with some reticence given the delays and litigative improprieties here, the Court will deem the dismissal of the second cause of action to be without prejudice.  Because the dismissal of the third cause of action turns on the viability of the second, that dismissal will also be without prejudice to

SPA-12

repleading should the second count be refiled (and, of course, should be deemed to be without prejudice as to refiling in a state forum).

This Court's determination that the second and third claims might be subject to repleading should not be viewed by counsel as aspirational. *Schimkewitsch v. New York Inst. of Tech.*, No. CV 19-5199 (GRB)(AYS), 2020 WL 3000483, at *7 (E.D.N.Y. June 4, 2020) ("plaintiff's counsel is cautioned that repleading should be undertaken only if warranted by the available facts").  In other words, counsel is cautioned that it should only attempt refiling after careful consideration of the matters contained in this opinion and after a thorough determination that such repleading is appropriate.  On this motion, defense counsel makes formidable arguments that the dismissal should be with prejudice because of plaintiff's "bad faith" in litigating this action.  Of course, should plaintiff attempt to refile the action, all of these arguments will remain available to defendant to oppose the refiling and support any other relief that might be sought.  Thus, plaintiff should proceed with caution.

*Conclusion*

For the reasons set forth herein, plaintiff's claim for trademark infringement is dismissed with prejudice, while its claims for unfair competition under state and federal law are dismissed without prejudice.  Defendant's motions to amend its answer and for summary judgment are denied as moot.  Should plaintiff opt to seek leave to file an amended complaint, such motion shall be filed within twenty days of the date of this order.

**SO ORDERED.**

Dated:  July 26, 2023
          Central Islip, New York

/s/ Gary R. Brown_____
**GARY R. BROWN**
**UNITED STATES DISTRICT JUDGE**

12

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
RIPPLE ANALYTICS, INC.,

                    Plaintiff,

        - against -

PEOPLE CENTER, INC., d/b/a RIPPLING,

                    Defendant.
------------------------------------------------------------X

**JUDGMENT**
CV 20-894 (GRB) (ARL)

A Memorandum and Order of Honorable Gary R. Brown, United States District Judge, having been filed on July 26, 2023, dismissing Plaintiff's claim for trademark infringement with prejudice; and an Order Adopting Report and Recommendations of Honorable Gary R. Brown, United States District Judge, having been filed on February 5, 2024, adopting the January 5, 2024 Report and Recommendations of United States Magistrate Judge Arlene R. Lindsay in their entirety, denying Plaintiff's motion for leave to file an amended complaint to assert claims against Defendant under Section 43(a) of the Lanham Act and New York common law for unfair competition, declining pendent jurisdiction, and directing the Clerk of the Court to close the case, it is

**ORDERED AND ADJUDGED** that Plaintiff Ripple Analytics, Inc., take nothing of Defendant People Center, Inc.; that Plaintiff's claim for trademark infringement is dismissed with prejudice; that Plaintiff's motion for leave to file an amended complaint to assert claims against Defendant under Section 43(a) of the Lanham Act and New York common law for unfair competition is denied; that the Court declines pendent jurisdiction; and that this case is closed.

SPA-14

Dated: February 5, 2023
       Central Islip, New York

                                        BRENNA B. MAHONEY
                                        CLERK OF COURT

                              BY:   /s/ JAMES J. TORITTO
                                    DEPUTY CLERK