# No. 24-490

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

RIPPLE ANALYTICS INC.,
> *Plaintiff-Counter-Defendant-Appellant,*

v.

PEOPLE CENTER, INC., D/B/A RIPPLING,
> *Defendant-Counter-Claimant-Appellee.*

———————————

On Appeal from the United States District Court
for the Eastern District of New York, No. 2:20-cv-894
Hon. Gary R. Brown, U.S. District Judge

———————————

## RESPONSE BRIEF FOR APPELLEE
## PEOPLE CENTER, INC.

### – REDACTED –

———————————

Bruce W. Baber
KING & SPALDING LLP
1180 Peachtree Street NE
Suite 1600
Atlanta, GA 30309

Tim F. Williams
DORITY & MANNING, P.A.
75 Beattie Place, Suite 1100
Greenville, SC 29601

Jeremy M. Bylund
E. Caroline Freeman
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
jbylund@kslaw.com

*Counsel for Defendant-Counter-Claimant-Appellee People Center, Inc.*

October 15, 2024

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Defendant-Counter-Claimant-Appellee People Center, Inc. d/b/a Rippling certifies that it has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT.............................................i

TABLE OF AUTHORITIES..................................................................iv

INTRODUCTION ................................................................................1

STATEMENT OF THE CASE ............................................................4

SUMMARY OF ARGUMENT ..........................................................15

ARGUMENT ....................................................................................16

I.    The District Court Did Not Abuse Its Discretion in Dismissing Under Rule 17 or in Denying the Motion to File an Amended Complaint ................................................................16

    A.    Ripple Analytics Is Not the Real Party in Interest and Has No Right to Sue...............................................................17

    B.    The District Court Did Not Abuse Its Discretion by Dismissing Under Rule 17....................................................24

        1.    Ripple Analytics Failed to Use Rule 17 Despite Multiple Opportunities and Adequate Time ..............25

        2.    Ripple Analytics Could Not Have Used Rule 17 in Any Event .............................................................32

    C.    The Assignment Is Fatal to Ripple Analytics' Infringement Claim ............................................................38

    D.    The Assignment Is Fatal to the Unfair-Competition Claims................................................................................40

    E.    The District Court Did Not Abuse Its Discretion in Denying Ripple Analytics' Motion for Leave to Amend Its Complaint........................................................................52

II.   The District Court Did Not Abuse Its Discretion Regarding People Center's Motion for Leave to Amend Its Answer..............57

A.    There Is No Issue for Appeal Because the Motion to Amend the Answer Was Denied ............................................. 58

B.    Ripple Analytics' Arguments Fail on the Merits ................. 60

    1.    People Center Demonstrated Good Cause and Ripple Analytics Failed to Prove Undue Prejudice ........................................................................ 60

    2.    People Center Did Not "Waive" Its Argument that Ripple Analytics Failed to Establish Necessary Elements of Its Claims ............................... 67

CONCLUSION ........................................................................... 69

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
106 F.3d 11 (2d Cir. 1997) ...............................................24, 25, 33, 34

*Amazon Techs., Inc. v. Jeffrey S. Wax*,
95 U.S.P.Q.2d 1865, 2010 WL 3597254 (T.T.A.B. 2010) ...................22

*Berni v. Int'l Gourmet Rests. of Am., Inc.*,
838 F.2d 642 (2d Cir. 1988) ...............................................................39, 48

*Block v. First Blood Assocs.*,
988 F.2d 344 (2d Cir. 1993) ...............................................................58

*Bugliotti v. Argentina*,
67 F.4th 102 (2d Cir. 2023) ...............................................................17

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*,
790 F.3d 411 (2d Cir. 2015) ...........................................................*passim*

*CSL Silicones, Inc. v. Midsun Grp. Inc.*,
301 F. Supp. 3d 328 (D. Conn. 2018)...............................................41

*Dekalb Cnty. Pension Fund v. Transocean Ltd.*,
817 F.3d 393 (2d Cir. 2016) ...............................................................34

*Delor v. Intercosmos Media Grp., Inc.*,
232 F.R.D. 562 (E.D. La. 2005).........................................................35

*Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*,
726 F.3d 62 (2d Cir. 2013) .............................................................*passim*

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*,
623 F.3d 61 (2d Cir. 2010) ...............................................................20, 40

*Fin. Inv. Co. (Bermuda) Ltd. v. Geberit AG*,
165 F.3d 526 (7th Cir. 1998).........................................................44, 57

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.*,
991 F.3d 370 (2d Cir. 2021) .........................................................17, 20

iv

*Gillette Co. v. Kempel*,
   254 F.2d 402 (C.C.P.A. 1958) .............................................................. 21

*Grace v. Rosenstock*,
   228 F.3d 40 (2d Cir. 2000) ................................................................... 59

*Grochowski v. Phoenix Constr.*,
   318 F.3d 80 (2d Cir. 2003) ................................................................... 60

*Gruen Mktg. Corp. v. Benrus Watch Co.*,
   955 F. Supp. 979 (N.D. Ill. 1997) ....................................................... 53

*Harrington v. Atl. Sounding Co.*,
   602 F.3d 113 (2d Cir. 2010) ................................................................ 30

*Haxtun Tel. Co. v. AT&T Corp.*,
   57 F. App'x 355 (10th Cir. 2003) ................................................. 29, 30

*ICON Grp., Inc. v. Mahogany Run Dev. Corp.*,
   829 F.2d 473, 478 (3d Cir. 1987) ........................................................ 30

*In re Johns-Manville Corp.*,
   759 F.3d 206 (2d Cir. 2014) ................................................................ 46

*Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*,
   176 F. Supp. 3d 137 (E.D.N.Y 2016) .................................................. 48

*ITC Ltd. v. Punchgini, Inc.*,
   482 F.3d 135 (2d Cir. 2007) ............................................. 41, 53, 57, 67

*JC Hosp. v. Hochberg*,
   703 F. Supp. 3d 448 (S.D.N.Y. 2023) .................................................. 42

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
   58 F.3d 27 (2d Cir. 1995) .................................................................... 49

*Kamen v. AT&T Co.*,
   791 F.2d 1006 (2d Cir. 1986) ......................................................... 43, 55

*Kassner v. 2nd Ave. Delicatessen Inc.*,
   496 F.3d 229 (2d Cir. 2007) ................................................................ 61

*Klein ex rel. Qlik Techs., Inc. v. Qlik Techs., Inc.*,
    906 F.3d 215 (2d Cir. 2018) ................................................................ 33

*Kohler Co. v. Bold Int'l FZCO*,
    422 F. Supp. 3d 681 (E.D.N.Y. 2018) ................................................. 50

*Kroma Makeup EU, LLC*
    *v. Boldface Licensing + Branding, Inc.*,
    920 F.3d 704 (11th Cir. 2019) ....................................................... 44, 57

*L'Oreal USA, Inc. v. Trend Beauty Corp.*,
    2013 WL 4400532 (S.D.N.Y. Aug. 15, 2013) ..................................... 40

*Lans v. Digital Equip. Corp.*,
    252 F.3d 1320 (Fed. Cir. 2001) .................................................... 34, 35

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ....................................................................... 41, 67

*Lyman v. CSX Transp., Inc.*,
    364 F. App'x 699 (2d Cir. 2010) .......................................................... 68

*McCall v. Pataki*,
    232 F.3d 321 (2d Cir. 2000) ................................................................ 25

*Mileski v. Long Island R.R.*,
    499 F.2d 1169 (2d Cir. 1974) .............................................................. 31

*N. Star IP Holdings, LLC v. Icon Trade Servs., LLC*,
    710 F. Supp. 3d 183 (S.D.N.Y. 2024 .................................................. 67

*Park B. Smith, Inc. v. CHF Indus., Inc.*,
    811 F. Supp. 2d 766 (S.D.N.Y. 2011)................................................. 32

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993) .............................................................. 43

*Rajamin v. Deutsche Bank Nat'l Tr. Co.*,
    757 F.3d 79 (2d Cir. 2014) ............................................................ 43, 55

*Replogle v. Air-Way Co.*,
    287 F. 765 (D.C. 1923) ........................................................................ 22

*Robi v. Five Platters, Inc.*,
    918 F.2d 1439 (9th Cir. 1990) ............................................................. 23

*Robi v. Reed*,
    173 F.3d 736 (9th Cir. 1999) ............................................................... 23

*Rynasko v. N.Y. Univ.*,
    63 F.4th 186 (2d Cir. 2023) ................................................................... 2

*Smith v. Hogan*,
    794 F.3d 249 (2d Cir. 2015) ............................................................... 52

*Souza v. Exotic Island Enters., Inc.*,
    68 F.4th 99 (2d Cir. 2023) ................................................................... 41

*Specht v. Google Inc.*,
    747 F.3d 929 (7th Cir. 2014) ......................................................... 21, 38

*State Teachers Ret. Bd. v. Fluor Corp.*,
    654 F.2d 843 (2d Cir. 1981) ............................................................... 61

*Thursday LLC v. DNVB, Inc.*,
    2021 WL 2689061 (S.D.N.Y. June 29, 2021) ..................................... 22

*Tripathy v. McKoy*,
    103 F.4th 106 (2d Cir. 2024) .............................................................. 48

*U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*,
    775 F.3d 128 (2d Cir. 2014) ............................................................... 68

*Yak v. Bank Brussels Lambert*,
    252 F.3d 127 (2d Cir. 2001) ............................................................... 43

**Statutes**

15 U.S.C. § 1058 ...................................................................................... 2

15 U.S.C. § 1114 ........................................................................... 7, 12, 38

15 U.S.C. § 1125 .............................................................................. *passim*

15 U.S.C. § 1127 ................................................................................... 38

vii

## Rules

Fed. R. Civ. P. 17 ........................................................................17, 25, 30

Fed. R. Civ. P. 30 ...................................................................................63

## Other Authorities

2 J. Thomas McCarthy,
    McCarthy on Trademarks
    and Unfair Competition (5th ed.)...............................................21, 55

5 J. Thomas McCarthy,
    McCarthy on Trademarks
    and Unfair Competition (5th ed.).....................................20, 41, 44, 55

N.Y. State Unified Ct. Sys.,
    *Attorney Online Services – Search*,
    https://iapps.courts.state.ny.us/attorneyservices/search?0..................4

*People Ctr., Inc. v. Ripple Analytics Inc.*,
    No. 92073848 (T.T.A.B. June 2, 2020),
    *available at* https://ttabvue.uspto.gov/ttabvue/
    v?pno=92073848&pty=CAN .............................................................51

Trademark Assignment,
    USPTO, No. 900843690 (Mar. 27, 2024),
    *available at* https://assignments.uspto.gov/
    assignments/assignment-tm-8381-0118.pdf .........................................2

USPTO,
    *Declaration of Use* (Mar. 27, 2024),
    https://tsdr.uspto.gov/documentviewer?
    caseId=sn87145532&docId=S0820240327145001
    &linkId=2#docIndex=1&page=1 ..........................................................2

## INTRODUCTION

This appeal is straightforward. Appellant Ripple Analytics, Inc. does not have any ownership interest in, or license to, the alleged RIPPLE mark that is the basis of its claims. The district court properly dismissed Ripple Analytics' complaint and acted within its discretion in denying Ripple Analytics' subsequent motion to file an amended complaint. Ripple Analytics knew about this fatal defect at the time it filed this litigation in 2020 because it had affirmatively assigned all of its rights, causes of action, rights to sue, and remedies to non-party Noah Pusey less than two years before. Ripple Analytics then affirmatively misrepresented in its complaint and throughout discovery that it owned the RIPPLE mark and was the real party in interest. The district court correctly identified Ripple Analytics' ownership allegations as "blazingly untrue" and, when Ripple Analytics argued that it could sue anyway, the court appropriately characterized such arguments as based on "logic befitting *Alice in Wonderland*." SPA-2, SPA-4.

Ripple Analytics' arguments before this Court are more of the same obfuscation. For example, Ripple Analytics disclaims the dispositive assignment of its rights to Pusey by stating that "no assignment was

recorded with the USPTO." RA Br. 10-11. That is plainly false. The assignment was recorded with the U.S. Patent and Trademark Office ("USPTO") on March 27, 2024, and is publicly available.[1] And Pusey continues to accord the assignment binding weight as shown by his filing of a Declaration of Use with the USPTO—a statutory requirement imposed on "the owner" of a registered mark between the fifth- and sixth-year anniversaries of the registration date, *see* 15 U.S.C. § 1058(a)(1)— in which he identified himself as the "owner" of the mark as an "individual."[2] Ripple Analytics' transparent tactics should be rejected and the district court affirmed.

The case hinges on a simple question of law: whether an assignor such as Ripple Analytics that assigns all trademark rights in totality— including the right to sue—is barred from asserting the trademark rights it assigned away. Despite the smoke and mirrors in Ripple Analytics'

---

[1] Trademark Assignment, USPTO, No. 900843690 (Mar. 27, 2024), *available at* https://assignments.uspto.gov/assignments/assignment-tm-8381-0118.pdf. The court may take judicial notice of documents from official government websites. *Rynasko v. N.Y. Univ.*, 63 F.4th 186, 191 n.4 (2d Cir. 2023).

[2] *See* USPTO, *Declaration of Use* (Mar. 27, 2024), https://tsdr.uspto.gov/documentviewer?caseId=sn87145532&docId=S0820240327145001&linkId=2#docIndex=1&page=1.

opening brief, the answer is simple and well-established. When an assignor transfers all rights in a trademark, including the right to bring causes of action based on the trademark, it no longer has a protectable legal interest in the trademark. The assignee is the real party in interest in any action based on the mark. When there is uncontroverted evidence that the assignee never licensed any rights back to the assignor, the assignor cannot prosecute any claim in its own name. Yet that is what Ripple Analytics seeks to do here.

Ripple Analytics sued in its own name for alleged infringement and unfair competition under the Lanham Act and unfair competition under New York law. Despite repeatedly avowing that it owned the alleged RIPPLE mark, Ripple Analytics' documents produced in discovery showed that it had assigned to Pusey all rights to the mark. After giving Ripple Analytics repeated opportunities to attempt to cure its failure to include the real party in interest (Pusey) in the lawsuit, the district court granted the motion of appellee People Center, Inc. under Rule 17 and dismissed the infringement claim with prejudice. The district court acted within its discretion.

3

The district court also dismissed the unfair competition claim under the Lanham Act without prejudice and declined to exercise supplemental jurisdiction over the New York claim. The district court subsequently denied Ripple Analytics' motion to amend its complaint because Ripple Analytics failed to remedy the fatal legal flaw in its complaint: namely, that Ripple Analytics has no right to sue over the disputed mark.

This Court should affirm.

## STATEMENT OF THE CASE

In 2018, Noah Pusey, a licensed attorney,[3] drafted and signed an "Assignment And Assumption Agreement" (the "Assignment Agreement") and an accompanying "Bill Of Sale And Assignment" (the "Bill of Sale"). Under those contracts, Ripple Analytics assigned to Pusey, its CEO and President, all of its rights in the RIPPLE trademark, all goodwill associated with that mark, and all claims and causes of action related to that mark, including those arising either before or after the execution of the agreement.

---

[3] Mr. Pusey is a licensed attorney in New York since 1999. *See* N.Y. State Unified Ct. Sys., *Attorney Online Services – Search*, https://iapps. courts.state.ny.us/attorneyservices/search?0.

In the Assignment Agreement, Ripple Analytics, as "Assignor," assigned all of its rights in specified intellectual property, including the RIPPLE mark, to Noah L. Pusey, as "Assignee":

> 2. **Assignment; Assumption of Obligations.** Ripple hereby assigns, conveys and transfers to Assignee (the "***Assignment***"), and Assignee does hereby accept the Assignment of, all right, title and interest in and to Covered IP, the Assignor's Intellectual Property and derivatives thereof throughout the world related to the Covered IP (collectively, the "***Assets***"). Assignor shall execute all instruments and do all acts which may in Assignee's opinion be necessary to carry out the provisions of this Agreement. The Assignment under this Agreement includes all of Assignor's claims, causes of action and right to sue for, as well as right to settle or release from, the infringement by any third party of any rights in and to the Covered IP and Assignor's Intellectual Property and any derivatives thereof that Assignor may possess therein, whether such claims and causes of action are filed, arose, or accrued before or after the execution of this Agreement, and all remedies associated therewith. Upon the Assignment to Assignee, Assignor agrees that the Covered IP and all Assignor's Intellectual Property shall become "Confidential Information" as defined in Section 4 below.

A-360 ¶ 2.[4]    The Assignment Agreement also included an "Acknowledgment of Rights":

---

[4] For the Court's convenience, People Center uses the same citation conventions as Ripple Analytics' opening brief. "SPA" refers to Ripple Analytics' Special Appendix. "A" refers to the Joint Appendix. "CA" refers to the Confidential Appendix.

> In furtherance of this Agreement, Ripple hereby acknowledges that, from this date forward, Assignee has succeeded to all of Ripple's right, title and standing to … [i]nstitute and prosecute all suits and proceedings and take all actions that Assignee, in its sole discretion, may deem necessary or proper to collect, assert, or enforce any claim, right or title of any kind in and to any and all of the Covered IP and the Intellectual Property rights therein … .

A-362 ¶ 6(b).

The Bill of Sale, which was referenced in and attached to the Assignment Agreement, defined the "Covered IP" in the Assignment Agreement. A-359; A-366. The Bill of Sale stated that Ripple Analytics had "agreed to sell, assign and transfer to [Pusey] all of [Ripple Analytics'] right, title and interest in and to" specified assets. A-366. Those assets—the "Covered IP" assigned to Pusey by the Assignment Agreement—included "[t]rade name rights to … Ripple, … registered and unregistered," "US Trademark Registration No. 5,430,908, and all goodwill associated therewith," and "[a]ll goodwill and going concern value associated with Ripple Analytics." A-367 ¶¶ 2, 3, 7.

Both documents were dated and executed April 13, 2018. A-359; A-366. Pusey signed both documents for Ripple Analytics as its President and CEO. A-363; A-366. He also signed the Assignment Agreement as the individual Assignee. A-363. And he had drafted both documents.

6

A-338; *see also* CA-193 (Tr. 170:7-9). The Assignment and Bill of Sale have since been recorded with the USPTO. *See supra* note 1.

Ripple Analytics sued People Center in February 2020, claiming trademark infringement under 15 U.S.C. § 1114(1), unfair competition under 15 U.S.C. § 1125(a), and unfair competition under New York common law. A-22, A-25. The complaint alleged that Ripple Analytics owned the federally registered RIPPLE trademark, U.S. Reg. No. 5,430,908, which Ripple Analytics claimed it used in connection with its human resources-related software platform. A-26 ¶ 13, A-27 ¶ 17. It alleged that People Center's use of the mark RIPPLING for its own software infringed Ripple Analytics' mark. A-22 ¶ 1. And Ripple Analytics alleged that it owned "all right, title and interest in and to the RIPPLE® mark." A-30 ¶ 31, A-33 ¶ 50.

The district court set a July 13, 2020 deadline for the parties to file a motion for joinder of additional parties or to amend the pleadings. CA-14; A-7 (ECF 15). On May 26, 2020, People Center served Ripple Analytics with interrogatories and requested that it identify "each agreement or understanding" relating to the RIPPLE mark. *See* ECF 26-

7

1 at 7 ¶ 3;[5] *see also* CA-222 (Interrogatory 3). It also served requests for production, including for all documents responsive to, relied upon, or identified in Ripple Analytics' responses to the interrogatories. *See* ECF 26-2 at 12 ¶ 45; *see also* CA-252 (Request 45). When Ripple Analytics responded a month later, it referred to itself as the owner of the mark. *See, e.g.*, ECF 26-3 at 5 ("Plaintiff's trademark registration"), 9 ("Plaintiff's RIPPLE Mark"); *see also* CA-230, 233. It objected to the request that it identify each agreement related to the mark but stated that it would "produce license agreements concerning the RIPPLE mark which contain sufficient information to enable Defendant to ascertain the answer to this Interrogatory." *See* ECF 26-3 at 8-9; *see also* CA-232-33.[6]

In August 2020, Ripple Analytics changed counsel. A-7-8 (ECF 19-26). With new counsel in October 2020, over four months after People Center's discovery requests—and nearly three months after the deadline for joinder or amendments set by the scheduling order—Ripple Analytics

---

[5] Page references to the district court's docket are to the ECF pagination.

[6] Even Ripple Analytics' amended responses and objections, sent by its present counsel well over a year after People Center served its initial interrogatories, repeat these same assertions of ownership. A-402, A-405.

produced the Assignment Agreement and the Bill of Sale which show that all of the rights asserted by Ripple Analytics had been assigned by Ripple Analytics to Pusey in April of 2018. Those documents were buried in a production of over 8,000 pages. CA-16, CA-257.

In January 2021, Ripple Analytics changed counsel again, stalling the litigation until mid-2021. A-9 (ECF 37-45). People Center conducted further discovery to determine whether Ripple Analytics lacked ownership of the mark and standing to sue. *See* A-338; *see also* CA-17. Despite the Assignment Agreement, Pusey testified at a deposition in August 2021 that Ripple Analytics was the owner of the trademark. *See* SPA-2 (quoting CA-405 (Tr. 123:13-15)). In November 2021, Pusey was deposed as Ripple Analytics' corporate representative. CA-182. People Center asked whether Pusey or Ripple Analytics had assigned any interest in the lawsuit to a third party. SPA-2 n.1. Ripple Analytics' counsel objected and instructed Pusey not to answer. SPA-2 n.1. Counsel also represented that ███████████████████████████████████████ ████████████████ CA-187 (Tr. 102:17-19).

On December 30, 2021, People Center informed Ripple Analytics that it intended to file an amended answer relating to Ripple Analytics'

lack of ownership of the trademark rights it asserted in the complaint. A-420. Ripple Analytics responded two weeks later that it had standing and that, in any event, "any issue concerning standing is easily cured by adding Noah Pusey as a party-plaintiff" because Pusey had standing "[a]s an assignee of the registrant, Ripple." A-422. After further exchanges, Ripple Analytics repeated that "any possible standing issue is easily cured … by adding Noah Pusey as a party plaintiff." A-427. It also asserted that Pusey could "ratify the allegations in the complaint." A-427.

People Center served notice of its motion for leave to amend its answer on February 2, 2022. CA-1. It also moved to dismiss the action under Rule 17 for failure to prosecute in the name of the real party in interest and moved for summary judgment under Rule 56. A-195-99 (pre-motion letters); CA-361 (notice of motions).

On July 8, 2022, the district court held a conference on the pending motion for leave to amend the answer and the proposed motions to dismiss and for summary judgment. A-203. The court asked Ripple Analytics' counsel whether Ripple Analytics was "prepared to substitute Mr. Pu[sey] in for the company as plaintiff." A-214 (Tr. 12:6-7). Ripple

Analytics' counsel did not answer, instead referring to "a couple of points on that score." A-214 (Tr. 12:8-9). He asserted that "*if* Mr. Pu[sey] was coming into the case, Mr. Pu[sey] *would be* coming into the case as an *additional* plaintiff with claims." A-214 (Tr. 12:18-20) (emphasis added). And he asserted that Pusey "coming into the case" might not be "necessary" because Rule 17 "does say that he can be substituted in or he can ratify what's in the complaint." A-214 (Tr. 12:19-23). The district court then heard argument on the fully briefed motion to amend. A-232-33. The court granted the motion to amend "for now," noting that "[i]t may be that once I decide these motions, some of those defenses get knocked out or get changed." A-233 (Tr. 31:22-25).

The district court subsequently granted People Center's motion to dismiss under Rule 17 on July 26, 2023, finding that "despite numerous objections by defendant since 2021, inquiry by the Court and repeated representations made by plaintiff's counsel, the plaintiff, which no longer owns the trademark in question, the associated goodwill or any claims made in this action, has failed to effectively remedy this defect." SPA-1. With emphatic language, the court found that Ripple Analytics' repeated assertions and testimony that Ripple Analytics owned the mark were

11

"blazingly untrue." SPA-2. The truth had come out in document discovery, where the legal documents showed that Ripple Analytics had assigned to Pusey all of Ripple Analytics' interests in the mark, including all claims emanating from or based on the mark. SPA-2. But despite Ripple Analytics' assertions that any real-party-in-interest and standing issues could be cured by joinder or ratification, Ripple Analytics never remedied the defect. SPA-3-7. The court therefore dismissed with prejudice Ripple Analytics' infringement claim under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), finding that "any attempt to revive the trademark infringement claim as to Ripple Analytics would be futile, as the undisputed facts demonstrate that plaintiff is not the owner of the trademark, a critical element of a trademark infringement claim." SPA-11.

The district court also found that Ripple Analytics failed to adequately allege standing for its federal unfair competition claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). SPA-7-9. According to the complaint, Ripple Analytics' claim was predicated on its alleged ownership of the RIPPLE mark, "which plaintiff now acknowledges is factually false." SPA-8. Although Ripple Analytics

12

argued that "Ripple must be the party actually using the mark," SPA-7 (quoting CA-536), the court determined that "[n]one of the allegations support plaintiff's new-found notion that its standing derives solely from its usage of the mark distinct from its alleged ownership." SPA-9. It dismissed the Section 43(a) claim but, "with some reticence given the delays and litigative improprieties here," ordered that dismissal without prejudice because it was unclear whether amendment would be futile. SPA-11.

Finally, having decided to dismiss both federal claims, the district court declined to exercise jurisdiction over Ripple Analytics' claim under New York common law for unfair competition. SPA-9-10. It dismissed that claim without prejudice because its viability turned on the viability of the federal unfair competition claim. SPA-11-12.

Because it dismissed all three claims, the district court denied as moot People Center's motion to amend its answer and its motion for summary judgment, SPA-12, despite its previous interlocutory grant of People Center's motion to amend.

Ripple Analytics moved for leave to file an amended complaint asserting only the federal and state unfair competition claims. A-240,

A-244. People Center opposed, arguing that the amendment would be futile because Ripple Analytics was still not the real party in interest, Ripple Analytics had acted in bad faith, Ripple Analytics had not shown good cause, and the amendment would unduly prejudice People Center. A-336-37.

In January 2024, the magistrate judge issued a report and recommendation for denial of Ripple Analytics' motion for leave to file an amended complaint. A-324-31. Ripple Analytics filed objections to the report and recommendation. A-431. In February 2024, the district court determined that Ripple Analytics' objections failed to raise any colorable objection and merely recited the facts and issues that were presented to the magistrate judge. A-19-20 (docket entry of Feb. 5, 2024). The district court nonetheless reviewed the report and recommendation *de novo*, adopted the findings and recommendations in their entirety, and denied Ripple Analytics' motion to file an amended complaint. *Id.*

Ripple Analytics appealed from the final judgment. *See* A-20 (ECF 115); A-469.

## SUMMARY OF ARGUMENT

I.  The district court acted within its discretion to dismiss Ripple Analytics' complaint under Rule 17 because the real party in interest, Noah Pusey, neither was added as a party nor agreed to be bound by the outcome of the action.  There is no doubt that Pusey, not Ripple Analytics, is the real party in interest.  Ripple Analytics was given multiple opportunities and adequate time to rectify the issue, but repeatedly failed to do so.

II.  The district court was correct to dismiss the federal trademark infringement and unfair competition claims because Ripple Analytics is not the real party in interest and lacks statutory standing.  There is no evidence in the record that Ripple Analytics had any legal right to bring suit, and all of the evidence establishes that those rights reside solely with Pusey.  Given that the federal claims were properly dismissed, the district court properly declined to assert supplemental jurisdiction over the state law claims.

III.  The district court properly denied Ripple Analytics' subsequent motion to file an amended complaint because the proposed amended pleading did not resolve the deficiencies in the original complaint.

15

Seeking to bring only unfair competition claims, Ripple Analytics again failed to establish that it had any right to bring suit for these claims or any other claim arising from or based on the alleged RIPPLE mark.

IV.    Finally, whether the district court properly granted People Center's motion to amend its answer is irrelevant and an unnecessary diversion.  The district court entered an interlocutory order granting the motion, but later denied the motion as moot.  The basis for dismissal was not found in People Center's amended answer, but in its motion to dismiss.  Ripple Analytics failed to plausibly allege statutory standing or cure the real-party-in-interest defect.  That ends the analysis.

## ARGUMENT

The district court's dismissal of the first complaint was legally sound and its denial of Ripple Analytics' motion to amend was within the court's discretion.

## I.    The District Court Did Not Abuse Its Discretion in Dismissing Under Rule 17 or in Denying the Motion to File an Amended Complaint.

Despite Ripple Analytics' misleading litigation strategy and blatantly false allegations, it is clear that Pusey—not Ripple Analytics— is the real party in interest in this case.  The district court's determination that Ripple Analytics is not the real party in interest is

16

reviewed *de novo* because it is a question of substantive law.   *See*

*Bugliotti v. Argentina*, 67 F.4th 102, 107 (2d Cir. 2023).   The decision to

dismiss pursuant to Rule 17(a) is reviewed for abuse of discretion.   *See*

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411,

417 (2d Cir. 2015).   The district court properly followed Rule 17 and acted

within its discretion in dismissing the infringement claim with prejudice,

in dismissing the unfair competition claims without prejudice, and in

denying the motion to file an amended complaint.

## A.   Ripple Analytics Is Not the Real Party in Interest and Has No Right to Sue.

Undisputed facts establish that Ripple Analytics is not the real

party in interest.   Federal Rule of Civil Procedure 17 requires every

action to "be prosecuted in the name of the real party in interest."

Fed. R. Civ. P. 17(a)(1).   The real party in interest "is the party with the

legal title to the claim asserted and is the party with the stake in the

controversy that is being used to invoke the court's jurisdiction."   *Fund*

*Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 389 (2d

Cir. 2021).   Pusey, not Ripple Analytics, has legal title to all claims

asserted in this action related to the RIPPLE mark, including not only

17

the claim of trademark infringement under the Lanham Act but also the federal and state law trademark-based unfair competition claims.

In contracts drafted by Pusey, a practicing attorney in New York, Ripple Analytics explicitly "assign[ed], convey[ed] and transfer[red] to [Pusey] … all right, title and interest in and to" certain intellectual property. A-360 ¶ 2. The Assignment Agreement "include[d] all of [Ripple Analytics'] claims, cause of actions and right to sue for … the infringement by any third party of any rights in and to" that intellectual property, "whether such claims and causes of action are filed, arose, or accrued before or after" the date of the assignment. *Id*.; *see also* A-362 ¶ 6 (stating that Pusey had "succeeded to all of Ripple's right, title and standing to … [i]nstitute and prosecute all suits and proceedings" related to the intellectual property). The Assignment Agreement defined the assigned intellectual property by reference to the attached Bill of Sale. A-359. Exhibit A to that Bill of Sale set out the assigned intellectual property in unmistakable terms:

18

**Exhibit A**

**Intangible & Tangible Assets**

1. The name "Ripple Analytics"
2. Trade name rights to Ripple Analytics, Ripple, Reflection Surveys and Ripple Effect Score, registered and unregistered
3. US Trademark Registration No. 5,430,908, and all goodwill associated therewith
4. All trademarks (including logos), registered and unregistered
5. Web site and domain address: www.ripplecrew.com
6. All email addresses ending with "@ripplecrew.com"
7. All goodwill and going concern value associated with Ripple Analytics
8. All strategic partnership, master servicing, referral, retainer and client-related agreements entered into by Ripple Analytics
9. All bank accounts, corporate accounts, vendor accounts held in the name of Ripple Analytics
10. All monies in any and all bank accounts held in the name of Ripple Analytics

A-367. Under the plain terms of the contract that Pusey drafted and signed, Ripple Analytics assigned to Pusey all right, title, and interest in and to the trademark as well as *all rights to bring claims related to the trademark*. Eventually, even Ripple Analytics was forced to acknowledge that it had assigned to Pusey the mark and the right to sue. A-265 ¶ 3; *see also* CA-516 (Ripple Analytics' Opp. to Rule 17 Mot.).

The Assignment Agreement is dispositive. It transfers ownership and *all rights* from Ripple Analytics to Pusey. This Court has held that

19

"ownership of the relevant trademark is one of the necessary elements …
of trademark infringement under the Lanham Act." *Fed. Treasury Enter.
Sojuzplodoimport v. Spirits Int'l N.V.*, 623 F.3d 61, 69 (2d Cir. 2010)
(cleaned up).  And an assignor with no remaining rights cannot sue for
unfair competition under 15 U.S.C. § 1125(a).  5 J. Thomas McCarthy,
McCarthy on Trademarks and Unfair Competition § 32:12 (5th ed.) ("[I]f
the license agreement prohibits the licensee from having the right to sue,
then it has no right to sue under § 43(a).").  Because of the Assignment
Agreement, Ripple Analytics does not have legal title to any asserted
claim and is not the real party in interest.  *See Fund Liquidation
Holdings*, 991 F.3d at 389.

In response to the district court's straightforward analysis, *see*
SPA-2, SPA-4-5, Ripple Analytics argues on appeal that "the assignment
… did not alter Ripple's ownership of the trademark."  RA Br. 30
(capitalization altered).  It concedes that "Ripple assigned the mark to
Pusey including the goodwill," *id.*, yet argues that "Ripple is Mr. Pusey
and Mr. Pusey is Ripple."  RA Br. 18-19.  But in March of this year, Pusey
made a filing with the USPTO where he declared he was the owner as an
"individual."  *See supra* note 2.

20

Ripple Analytics' argument makes no sense, is directly contrary to Pusey's recent filing with the USPTO, and asks this court to ignore corporate formalities. The Assignment Agreement is a legally binding transfer of rights and ownership from Ripple Analytics, an entity, to Pusey, an individual. *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 75 (2d Cir. 2013) (noting that "an 'assignment' is 'by definition ... a legal document that transfers title to the mark.'" (quoting 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 18:17 (5th ed.)). And "[a]fter an assignment, the assignor has divested itself of its trademark rights." *Id.* (quoting 2 McCarthy on Trademarks § 18:15).

As a matter of law, the 2018 Assignment Agreement made Pusey the owner of the mark and the real party in interest, while at the same time divesting Ripple Analytics of any ownership. *Id.*; *see Specht v. Google Inc.*, 747 F.3d 929, 933 (7th Cir. 2014) ("[T]he Lanham Act transfers standing to assignees, even if that party is not the registrant, to ensure that only the current owner of the mark can claim infringement."); *Gillette Co. v. Kempel*, 254 F.2d 402, 404 (C.C.P.A. 1958) ("[T]he assignee of a registration stands in the place of the registrant in

21

all respects."). Whatever rights Ripple Analytics had in the RIPPLE mark—including any claimed rights based on alleged priority of use—were conveyed to Pusey, and Ripple Analytics retained *no* rights. *See Replogle v. Air-Way Co.*, 287 F. 765, 766-67 (D.C. 1923). And Pusey has acknowledged his ownership as an individual to the USPTO. Pusey is the real party in interest, has been the real party in interest since 2018, and was the real party in interest when this action was filed by Ripple Analytics on February 19, 2020.

The cases cited by Ripple Analytics do not change the analysis. For example, *Amazon Techs., Inc. v. Jeffrey S. Wax*, 95 U.S.P.Q.2d 1865, 2010 WL 3597254 (T.T.A.B. 2010), stands for the unremarkable proposition that "there was no transfer to 'another,' as Mr. Wax was an original joint applicant and is now the sole remaining applicant." *Id.* at *8. Removing one of the joint applicants did not amount to a transfer to "another" because the other joint applicant remained. That case has no applicability here, where sole ownership was indisputably passed from Ripple Analytics to Pusey.

In *Thursday LLC v. DNVB, Inc.*, 2021 WL 2689061, at *1, *5 (S.D.N.Y. June 29, 2021), the court found that when a business

22

reorganizes with "the same purpose, members, corporate structure, and tax identification number" it is the same business. But here, Ripple Analytics transferred the mark to an individual and the mark was never transferred back. The assignment to Pusey was filed with the USPTO in March 2024, where he declared he was the owner as an individual, showing that it was not temporary or illusory. *Thursday* cannot help Ripple Analytics.

Finally, in *Robi v. Reed*, 173 F.3d 736, 739 (9th Cir. 1999), the court sided with a music band member who retained his rights to the disputed mark because he had continuously stayed with a music group over a member who left the band and "took no rights to the service mark with him." *Id.* at 740. The "invalid" assignments in that case had to do with (1) fraud against members of the band, *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1441 n.2 (9th Cir. 1990), and (2) assignments made by past members of the band who took no rights with them. *Reed*, 173 F.3d at 739. Nothing like that happened here.

None of the cases cited by Ripple Analytics undermine the valid Assignment in this case filed with the USPTO or Pusey's recent declaration as owner of the mark. According to that Assignment and as

23

confirmed by Pusey's declaration in March of this year, Pusey is the real party in interest.

## B. The District Court Did Not Abuse Its Discretion by Dismissing Under Rule 17.

Though rare, dismissals are appropriate under Rule 17 when parties refuse to, or are unable to, add the real party in interest. As discussed above, there is no doubt that Pusey is the real party in interest, and despite ample opportunity, neither Ripple Analytics nor Pusey ever joined or substituted Pusey as a party to this litigation, nor did Pusey ratify the litigation.

Rule 17(a) substitution "should be liberally allowed when the change is merely formal and *in no way alters the original complaint's factual allegations* as to the events or the participants." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997) (emphasis added); *see also Cortlandt*, 790 F.3d at 422 (describing *Advanced Magnetics* as "our Circuit's leading case interpreting" Rule 17). "If a party successfully moves for ratification, joinder, or substitution, 'the action proceeds as if it had been originally commenced by the real party in interest.'" *Cortlandt*, 790 F.3d at 421. But the district court retains "discretion to dismiss an action where there was no semblance of

any reasonable basis for the naming of an incorrect party." *Advanced Magnetics*, 106 F.3d at 20 (emphasis added).

There are multiple independent reasons to affirm the district court's dismissal. First, the district court did not abuse its discretion when it dismissed after Ripple Analytics had "ample opportunity" to correct its error "but simply failed or refused to do so." SPA-6. Second, Ripple Analytics had no "semblance of a reasonable basis" for naming the wrong party. Third, adding Pusey would substantively alter the action, which is not allowed under Rule 17. While the district court did not reach the latter two issues, the court can affirm on those grounds with the existing record that shows that Ripple Analytics could not have used the curative procedures of Rule 17. *McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000).

### 1. Ripple Analytics Failed to Use Rule 17 Despite Multiple Opportunities and Adequate Time.

Rule 17 provides that a court may "dismiss an action for failure to prosecute in the name of the real party in interest" if, "after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). The district court followed these procedures and acted within its discretion in

25

its dismissal. Ripple Analytics never even attempted to move for joinder or substitution of Pusey. Instead, it relied solely on a purported ratification by Pusey of the action. But that attempted ratification failed to satisfy this Court's requirement that the real party in action agree to be bound by the suit.

After it received notice of People Center's intent to move for leave to amend its answer, Ripple Analytics contended in an email to counsel for People Center that "any issue concerning standing is easily cured by adding Noah Pusey as a party-plaintiff." A-422. People Center responded that adding Pusey would not resolve the standing defect with respect to Ripple Analytics and that proceeding with the case was inappropriate in the light of the standing defect. A-425. Ripple Analytics insisted on proceeding with discovery. A-427. Although it again claimed that joining Pusey as a plaintiff would cure the standing defect and added as an alternative that he could "ratify the allegations in the complaint," Ripple Analytics did not move to join Pusey under Rule 17 or move for leave to amend its complaint to add Pusey. A-427.

At the pre-motion conference regarding People Center's Rule 17 motion and its motion for summary judgment, the district court gave

Ripple Analytics a clear opportunity to state whether and how it intended to attempt to cure the real-party-in-interest issue. The district court asked Ripple Analytics' counsel, "[a]re you prepared to substitute Mr. Pu[sey] in for the company as plaintiff?" A-214 (Tr. 12:6-7). Counsel for Ripple Analytics declined to give a clear answer. Instead, counsel referenced "a couple of points"—gesturing to all three possible curative procedures under Rule 17 without stating an intent to pursue any of them. A-214 (Tr. 12:8-9). Counsel stated that "*if* Mr. Pu[sey] was coming into the case, [he] would be coming into the case as an *additional plaintiff with claims*." A-214 (Tr. 12:18-20) (emphases added). Counsel also suggested that such joinder might not be "necessary because the rule does say that he can be substituted in or he can ratify what's in the complaint." A-214 (Tr. 12:20-23).

The district court instructed the parties to brief how the various curative procedures in Rule 17 might apply to each of Ripple Analytics' claims. A-220 (Tr. 18:22-25) ("I want to make sure you cover these issues.). Under Rule 17, are we talking about a substitution on Count 1 and a ratification of the other counts or are we joining or what?"). Ripple Analytics never moved to utilize any of those curative procedures.

27

Instead, it merely asserted in its opposition to People Center's motion for leave to amend that Pusey had ratified the allegations and claims in its complaint by an attached declaration. SPA-3; CA-276. That declaration recited the following:

> I have been overseeing and participating in all legal proceedings in this matter from the beginning. I have read the complaint and am fully familiar with all of the allegations in the complaint. Any judgment obtained in this or any case pursuing the interests of Ripple will be for my sole benefit; therefore I have a very strong interest in the outcome of this case.
>
> …
>
> By this Declaration, I ratify all of Plaintiff's allegations in this case and each cause of action alleged. As a real party in interest, I am prepared to step in immediately as Plaintiff.

*See* SPA-3 (quoting CA-286). But that was not a proper ratification.

This Court has held that "[t]o ratify a suit, the real party in interest *must* (1) authorize continuation of the action and (2) *agree to be bound by its result.*" *Fed. Treasury Enter.*, 726 F.3d at 83 (emphases added) (cleaned up). As People Center argued in its Rule 17 brief, Pusey's declaration did not include any agreement to be bound by the result of this litigation. *See* SPA-7 ("the deficit has been pointed out numerous times"); CA-380; *contra* RA Br. 38 n.3 (incorrectly asserting that Pusey's failure to agree to be bound was not raised anywhere in the record until

the Court's order). Therefore, the declaration did not effectively ratify the action under Rule 17. *See Fed. Treasury Enter.*, 726 F.3d at 83; *Haxtun Tel. Co. v. AT&T Corp.*, 57 F. App'x 355, 359 (10th Cir. 2003) (holding that affidavit that claimed to "'support and ratify'" plaintiff's claims but "include[d] no language evidencing an agreement to be bound by the result" was ineffective).

Ripple Analytics did not dispute that Pusey failed to agree to be bound, nor did it dispute that such an agreement is a requirement for ratification. *See* SPA-7; CA-532-33 (asserting that Pusey "ratified the Complaint in a declaration" without responding to People Center's arguments about the shortcoming in declining to be bound); CA-559 (noting Ripple Analytics' failure to respond).

The district court correctly found that nothing in Pusey's declaration satisfied the requirement that the real party in interest agree to be bound by the result of the litigation. SPA-6-7. Even after that deficit was pointed out, neither Ripple Analytics nor Pusey corrected it. SPA-8. Indeed, Ripple Analytics and Pusey have never made a motion under Rule 17; Pusey's declaration was only submitted in opposition to People Center's motion for leave to amend. The purported ratification

was therefore ineffective, and the district court correctly granted the Rule 17 motion because—after specific objections and more than a reasonable amount of time—Ripple Analytics failed to correct the real-party-in-interest issue. *See* Fed. R. Civ. P. 17(a)(3).

Ripple Analytics' arguments on appeal fail. First, it asserts that no "specific language" is required to ratify a pleading. RA Br. 35. But this Court requires that the real party in interest must agree to be bound. *Fed. Treasury Enter.*, 726 F.3d at 83; *see also Haxtun Tel. Co.*, 57 F. App'x at 359 (purported ratification was ineffective where it included "no language evidencing an agreement to be bound"). Ripple Analytics cites one authority for the agency law principle that ratification of an agreement may be implied, *see Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 127 (2d Cir. 2010), but that case has nothing to do with Rule 17. And the case law on point in this circuit requires a statement that the party will be bound. *Fed. Treasury Enter.*, 726 F.3d at 83 (adopting the ratification requirements in *ICON Group, Inc. v. Mahogany Run Development Corp.*, 829 F.2d 473, 478 (3d Cir. 1987), which requires ratification by "by acknowledgment *or other ratifying instrument*" (emphasis added)).

30

Next, Ripple Analytics asserts that because Pusey's declaration stated that he was "*prepared* to step in immediately as Plaintiff," *see* SPA-3 (emphasis added) (quoting CA-286 ¶ 8), he had "agreed to be bound." RA Br. 36. But that is not what he said. He was allegedly "prepared" to step in, but he never did and never affirmatively agreed to be bound. Similarly, Ripple Analytics stated that Pusey would be bound by the result *if* he were *added* as a plaintiff. CA-531; *see also* A-437. But this is a non sequitur because Ripple Analytics did not move to "add" Pusey as plaintiff. *See* SPA-3; A-214 (Tr. 12:6-23). And Ripple Analytics' unsupported assertion regarding Pusey's alleged subjective intent in submitting a declaration is not the same as a proper motion, a proper agreement by Pusey to be bound, or a declaration from Pusey about his intent. *Mileski v. Long Island R.R.*, 499 F.2d 1169, 1174 (2d Cir. 1974) ("[A]rguments of counsel are not evidence." (quotation marks omitted)). Repeating that assertion on appeal, RA Br. 37-38, does not change the record below.

Finally, Ripple Analytics contends that the district court misconstrued "what clearly was Mr. Pusey's intent," RA Br. 36, when it determined that counsel for Ripple Analytics "has already threatened to

31

file an identical suit." SPA-7. But even assuming there is no evidence that Pusey "was *unwilling* to be bound," RA Br. 38 (emphasis added), that would not matter. Rule 17, as interpreted by this Court, requires the real party in interest to affirmatively *agree* to be bound. Pusey never did so.

Ripple Analytics cannot rewrite the procedural history of this case on appeal. Ripple Analytics failed to add or substitute Pusey, and Pusey never ratified the action as required by the case law. Those failures were repeatedly pointed out, and neither Ripple Analytics nor Pusey corrected them. Rule 17 required no more before dismissal.

## 2. Ripple Analytics Could Not Have Used Rule 17 in Any Event.

This Court has "ordinarily allowed amendments under Rule 17 only 'when a mistake has been made as to the person entitled to bring suit *and* such substitution would not alter the substance of the action.'" *Cortlandt*, 790 F.3d at 424 (emphasis added) (quoting *Park B. Smith, Inc. v. CHF Indus., Inc.*, 811 F. Supp. 2d 766, 773 (S.D.N.Y. 2011)). There was no mistake here. And where "the factual allegations supporting" a legal claim would have to be altered in order to amend under Rule 17, such a change "would require more than a 'merely formal' alteration of

the complaint" and "would thus be fated to fail." *Id.* (quoting *Advanced Magnetics*, 106 F.3d at 20).

In its motion to dismiss under Rule 17, People Center argued that Ripple Analytics' failure to prosecute in the name of the real party in interest was neither a mistake nor understandable. *See* A-196; CA-381-84. The mistake requirement ensures that failure to add the correct party "was not 'deliberate or tactical.'" *Klein ex rel. Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 227 (2d Cir. 2018) (quoting *Advanced Magnetics*, 106 F.3d at 21).

The failure here was deliberate and tactical. Pusey, a licensed attorney, drafted and executed the assignment documents on behalf of Ripple Analytics. CA-381. And Pusey testified in a declaration that he was "fully familiar with all of the allegations in the complaint" and had been "oversee[ing]" the litigation "from the beginning." SPA-3 (quoting CA-286 ¶ 6). Therefore, both Ripple Analytics and Pusey were aware that the allegations in the complaint that Ripple Analytics "owns all right, title and interest in and to the RIPPLE® mark," A-30 ¶ 31, A-33 ¶ 50, were false because, in fact, Ripple Analytics had assigned to Pusey "*all* right, title and interest in and to" the mark, including associated

goodwill, as well as "all of [Ripple Analytics'] claims, causes of action and right to sue for … infringement." A-360 ¶ 2 (emphasis added); A-367. He also declined to answer questions about assignments at his deposition on advice of counsel. SPA-2 n.1; A-196; CA-187-88. As the district court found, for Ripple Analytics, "determining who owned the trademark and the resultant claims … was not difficult, nor can one really argue that there was an 'understandable mistake.'" SPA-6. That finding is sufficient on its own for dismissal. *See Advanced Magnetics*, 106 F.3d at 20; *see also Dekalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 412 (2d Cir. 2016), *as amended* (Apr. 29, 2016). Moreover, showing Ripple Analytics' and Pusey's gamesmanship at play, Pusey in filings this year with the USPTO has acknowledged that he is the true owner as an individual.

Other courts have dismissed actions or denied leave to use Rule 17 to attempt to cure a defect in similar circumstances. For example, in *Lans v. Digital Equipment Corp.*, the Federal Circuit upheld the district court's grant of summary judgment in favor of the defendants and its denial of leave to amend the complaint under Rules 15 and 17. 252 F.3d 1320, 1324-25 (Fed. Cir. 2001). In *Lans*, the plaintiff was an inventor

34

who sued the defendants for patent infringement, alleging that he owned the patent at issue. *Id.* at 1325. In fact, as the defendants learned during discovery, the plaintiff had assigned the patent to the company of which he was the managing director and sole shareholder. *Id.* at 1324-25. The Federal Circuit held that the district court "remained well within its broad discretion" in denying the plaintiff's motion for leave to amend the complaint to substitute his company as a plaintiff because his "original allegations were not honest and understandable mistakes," he "did not disclose the actual owner until the [defendants] discovered the assignment to [the plaintiff's company]," and because "even then he equivocated." *Id.* at 1328-29; *see also, e.g.*, *Delor v. Intercosmos Media Grp., Inc.*, 232 F.R.D. 562, 567-68 (E.D. La. 2005) (dismissing where plaintiff, who had alleged ownership of domain name, had in fact signed contract transferring ownership yet failed to disclose the transfer and continued to misrepresent facts). The same logic applies here.

Affirmance is also required for an independent reason: allowing amendment under Rule 17 would have substantially altered the substance of the action, including by necessitating significant alteration of the factual allegations. *See Cortlandt*, 790 F.3d at 424. As the district

35

court observed, the allegations in the complaint that Ripple Analytics owned the mark—as well as sworn testimony to the same effect—were "blazingly untrue." SPA-2. The complaint did not even mention Pusey, much less acknowledge the assignment. *See generally* A-22-36. Nor did it include any allegations of whether or how Pusey himself used the mark or was injured by any allegedly infringing actions. *Id.* Any amendment under Rule 17 would require an entirely new set of allegations on at least these fundamental issues—which are modifications that are not permitted by Rule 17.

Ripple Analytics asserts that "all of the claims and defenses would involve the same operative facts" if it were able to cure the real party in interest defect under Rule 17. RA Br. 40. But as People Center argued in the district court, Pusey's non-use of the mark raises the issue of abandonment and precludes Pusey's recovery of any damages. *See, e.g.*, A-196, A-211-13, CA-370, CA-384, CA-555 n.2. In its Objections and Responses to People Center's Rule 56 statement of material facts, Ripple Analytics asserted that ███████████████████████████████████ ████████████████████████████████ CA-456; *see also* A-215 (Tr. 13:20-22). As the district court observed in the pre-motion

conference, if Pusey asserted a claim for infringement of a mark he owned but did not use, there would be "a major problem as to whether this case goes forward." A-212 (Tr. 10:23-25); *see also* A-213-14, 218-19.

Any alteration of the original complaint to account for the fact that Pusey is the real party in interest would require an entirely new set of factual allegations on at least these fundamental issues and thus would "be fated to fail." *Cortlandt*, 790 F.3d at 424. *See* A-195; CA-378-80. Notably, Ripple Analytics does not dispute that the factual allegations would have to be altered. Instead, it contends that "[t]he allegations asserted in the operative pleading as asserted by Ripple are *equally applicable to Mr. Pusey*." RA Br. 40 (emphasis added). That careful phrasing cannot save Ripple Analytics from the reality that its allegations that *it* owned the mark and that *it* suffered damage based on its ownership would have to be fundamentally altered in order to "appl[y]" them to Pusey (who did not use the mark) and conform them with the facts. Accordingly, the nature of Pusey's suit would have to be significantly different from Ripple Analytics' suit. The district court properly dismissed the complaint on July 26, 2023.

37

**C.  The Assignment Is Fatal to Ripple Analytics' Infringement Claim.**

In its original complaint, Ripple Analytics asserted it owned the RIPPLE mark and asserted an infringement claim against People Center under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).  The Assignment Agreement is fatal to that claim.

Ripple Analytics has now conceded that it assigned the mark and all associated rights to Pusey and that it has no license to use the mark. *See* A-330; CA-721 (response to ¶ 64); *see also* SPA-9 (citing CA-538 n.11). Ripple Analytics argues that it still has statutory standing to sue as the "registrant" of the mark regardless of ownership.  RA Br. 20. That argument is unfounded as a matter of law.  "[B]oth as a matter of statutory interpretation and under general principles of trademark law, only the owner of the trademark is entitled to sue for its infringement" *Fed. Treasury Enter.*, 726 F.3d at 75 (cleaned up); *see also Specht*, 747 F.3d at 933 ("only *the current owner* of the mark can claim infringement" (emphasis added)); 15 U.S.C. § 1114(1) ("shall be liable in a civil action by the registrant"); 15 U.S.C. § 1127 (definition of "registrant" includes "assigns" of registrant).

38

Ripple Analytics emphasizes that, despite the Assignment Agreement, "no assignment was recorded with the USPTO, and Ripple continues to be listed as registrant." RA Br. 10-11. But that assertion is demonstrably false because the assignment was recorded with the USPTO and is publicly available on the USPTO website at *See supra* note 1.

Finally, Ripple Analytics appears to argue that, notwithstanding the Assignment Agreement, it still has standing under Section 32(1) because it was the original registrant of the RIPPLE mark and is a "prior owner." *See* RA Br. 4, 20. Ripple Analytics cites no case that has recognized a "prior owner" right to sue under Section 32(1), and this surprising proposition would mean—contrary to the language of Section 32(1) that contemplates that a registration have one owner with the ability to sue—that there are multiple "owners" of an assigned registration after the assignment and that both a "prior owner" and the current owner may assert the claims of a registrant / owner. That is incorrect. As this Court has recognized, the right to sue under Section 32(1) belongs "solely to" the registrant or its assignee—not both. *Berni v. Int'l Gourmet Rests. of Am., Inc.,* 838 F.2d 642, 646-47 (2d Cir. 1988)

39

(affirming dismissal where plaintiffs were neither registrants nor assignees of U.S. registration and could not pursue "rights as owners"); *see also Fed. Treasury Enter.*, 623 F.3d at 68 (after assignment, the assignee "succeed[s] to the rights of the assignor"); *accord L'Oreal USA, Inc. v. Trend Beauty Corp.*, 2013 WL 4400532, at *7-13 (S.D.N.Y. Aug. 15, 2013) (dismissing Section 32(1) claims brought by licensee party that was not owner, registrant, or assignee, successor, or legal representative of registrant).

The district court was correct in finding that Ripple Analytics did not have the right to bring the infringement claim under Section 32(1) and could not bring the infringement claim in its own name after the Assignment Agreement.

### D. The Assignment Is Fatal to the Unfair-Competition Claims.

Ripple Analytics also asserted in the original complaint claims for unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and New York common law. A-31-34. Dismissal was appropriate because Ripple Analytics lacked statutory standing and was not the real party in interest to bring the federal unfair competition claim. The New York claim also fails.

40

A claimant under 15 U.S.C. § 1125(a) must demonstrate that its "interests fall within the zone of interests protected by the law" and that its "injuries are proximately caused by violations of the statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129, 132 (2014) (quotation marks omitted). And the "plaintiff must demonstrate injury specifically to a 'commercial interest in reputation or sales.'" *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 118 (2d Cir. 2023) (quoting *Lexmark*, 572 U.S. at 131-32). Moreover, "if [a] license agreement prohibits the licensee from having the right to sue, then it has no right to sue under § 43(a)." 5 McCarthy on Trademarks § 32:12; *see also ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 154 (2d Cir. 2007) (stating that "a plaintiff must demonstrate its own right to use the mark or dress in question" to bring an unfair competition claim under 15 U.S.C. § 1125(a)); *see also CSL Silicones, Inc. v. Midsun Grp. Inc.*, 301 F. Supp. 3d 328, 346 (D. Conn. 2018) (same). When a plaintiff contends that its interest in a mark is derived from an agreement with the owner of the mark, such as a licensing agreement, the plaintiff must establish facts sufficient to show that the terms of that agreement convey the alleged

41

interest.  *See JC Hosp. v. Hochberg*, 703 F. Supp. 3d 448, 462 (S.D.N.Y. 2023).

Ripple Analytics failed to establish it was a real party in interest or allege statutory standing to bring the Section 43(a) claim in its own name because it does not fall within the zone of interests protected by that statute.  The complaint alleged that actions by People Center "infringe Plaintiff's RIPPLE® mark and constitute unfair competition in violation of 15 U.S.C. § 1125(a)" and New York common law.  A-32-34 ¶¶ 44, 53, 55.  Each of those claims was premised on Ripple Analytics' allegations that it owns the mark and the associated goodwill.  *See* A-32 ¶ 40 ("Plaintiff's RIPPLE® mark"), A-32 ¶ 41 ("Plaintiff's goodwill"), A-33 ¶ 50 ("Plaintiff owns all right, title and interest in and to the RIPPLE® mark"), A-34-35 ¶¶ 52-53, 55, 58 (goodwill).  Ripple Analytics did not allege that it had any other legal interest in the mark, such as through a license or assignment.  *See generally* A-22-36.

Given that Ripple Analytics finally acknowledged that it is not the owner of the mark, its complaint failed.[7]  Under *Lexmark*, there are no

---

[7] The court need not accept blatantly false allegations in the complaint that Ripple Analytics now acknowledges are false.  *Yak v. Bank Brussels*

allegations in the complaint (ignoring the blatantly false allegations of ownership) showing why Ripple Analytics would fall in the zone of interests protected by the Lanham Act. As a party with no ownership rights to the mark, there is simply not enough in the complaint to establish that Ripple Analytics has any commercial interest that is being harmed by People Center using a mark, namely RIPPLING, that is alleged to be similar to RIPPLE, a mark that Ripple Analytics no longer owns. A-22-36.

That conclusion is reinforced by principles of contract law because Ripple Analytics assigned that right to Pusey. "[I]f the license agreement prohibits the licensee from having the right to sue, then it has no right to

_Lambert_, 252 F.3d 127, 130-31 (2d Cir. 2001) (where plaintiff had notice of contracts she signed and complaint rested on her unstated belief that the contracts did not affect her claims, district court properly considered those contracts as incorporated into complaint because "[c]arefully avoiding all mention of the Consulting Agreements does not make them any less integral to [the] complaint."); _Pension Benefit Guar. Corp. v. White Consol. Indus., Inc._, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); _Kamen v. AT&T Co._, 791 F.2d 1006, 1010-11 (2d Cir. 1986) (allowing courts to look outside the complaint to competent evidence regarding lack of statutory standing); _Rajamin v. Deutsche Bank Nat'l Tr. Co._, 757 F.3d 79, 84-85 (2d Cir. 2014) (allowing a court to rely on "the undisputed facts evidenced in the record" in evaluating standing).

43

sue under § 43(a)." 5 McCarthy on Trademarks § 32:12; *see also Fin. Inv. Co. (Bermuda) Ltd. v. Geberit AG*, 165 F.3d 526, 532 (7th Cir. 1998) ("[T]he express terms of the license prohibited any of them from bringing suit in their own capacity."); *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 920 F.3d 704, 709-10 (11th Cir. 2019) (licensee did not have standing to sue for trademark infringement under Section 43(a) because the contracts "indicate[d] that [the trademark owner] alone has the exclusive right to sue for infringement.").

In response to People Center's Rule 17 and Rule 56 motions, Ripple Analytics asserted that it could bring a claim under Section 43(a) because it ███████████████████████████████" CA-536. ████████████████████

████████████████████████████████████████████████████

███████████████████████████████████. CA-536. ████████████

███████████████████████████████████████████. CA-721 (responding to ¶ 64 by stating ██████████████████████████████

████████████████████████████████████████████████████

███████████████████████████); *see also* SPA-9 ("Other than the [assignment agreement and bill of sale and assignment], there are no written agreements as to the use of the mark … ." (quoting CA-538 n.11)).

44

Nonetheless, Ripple Analytics contended that "if Mr. Pusey is 'not using' the mark and Ripple does not have 'license to use,' Ripple must be the party actually using the mark." SPA-7 (quoting CA-536). But Ripple Analytics has no explanation for how that "tortured logic," SPA-7, proves that it has a legal right within the zone of interests.

Ripple Analytics also asserted in a footnote that "even if the court were to conclude that Mr. Pusey was assigned the mark in a way that is valid, [the court] would have to account for the continued use by Ripple as based on some other arrangement. Any such arrangement, whether as an assignment or license back or as co-owners, would maintain the priority of the mark due to the related party attribution rule." *See* SPA-9 (quoting CA-538 n.11). It did not explain what "other arrangement" it hypothesized gave Ripple Analytics the legal right to use the mark, much less support that theory with evidence or allegations sufficient to show standing.

As the district court correctly found, no allegations in the original complaint supported Ripple Analytics' "new-found notion that its standing derives solely from its usage of the mark distinct from its alleged ownership." SPA-9. Even after the Rule 17 and Rule 56 motions

45

were fully briefed, "the nature of plaintiff's *right* to such use remains speculative and inscrutable." SPA-9 (emphasis added). The district court was correct to dismiss the Section 43(a) claim.

On appeal, Ripple Analytics seeks to explain the "other arrangement" that it theorizes gave it the right to use the mark. It asserts that "its rights could not be more clear" because its "use of the mark was at all times with the full knowledge and permission of Mr. Pusey" and it "utilized the mark in commerce for many years with the permission of Mr. Pusey." RA Br. 44-45. That argument fails for several reasons.

First, Ripple Analytics did not assert this theory in the district court with respect to the motion to dismiss, so it cannot raise it now to attack the district court's dismissal order. *In re Johns-Manville Corp.*, 759 F.3d 206, 219 (2d Cir. 2014) ("[T]he circumstances normally do not militate in favor of an exercise of discretion to address ... new arguments on appeal where those arguments were available to the [parties] below and they proffer no reason for their failure to raise the arguments below.").

46

Second, Ripple Analytics does not cite any record evidence (or even any allegations) to support its new theory.  RA Br. 44-45.  Indeed, no allegations in the complaint *could* support this new theory; the complaint contradicts it because the complaint incorrectly alleges that Ripple Analytics "owns all right, title and interest in and to the RIPPLE® mark." A-33 ¶ 50.

Third, the evidence contradicts this new theory.  The plain language of the Assignment Agreement clearly conveyed from Ripple Analytics to Pusey "*all* right, title and interest in and to" the mark, "includ[ing] all of [Ripple Analytics'] claims, causes of action and right to sue for … the infringement by any third party of *any rights* in and to the [mark] … and all remedies associated therewith."  A-360 ¶ 2 (emphasis added).  "All" rights and interest in the mark and "all" claims for "any rights in and to" the mark certainly includes any right to sue for unfair competition based on use of an allegedly similar mark.

Fourth, Ripple Analytics admitted in the district court that ██ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ CA-721 (response to ¶ 64); *see* A-330.  In other words, ████████████████

██ ██ ████████████████████████████████████████████

Ripple Analytics' attempt to claim the opposite now on appeal should be rejected.

After dismissing the federal claims, the district court declined to exercise supplemental jurisdiction over Ripple Analytics' state law claim. *See* SPA-9-10. Ripple Analytics does not contend that this was an abuse of discretion. *See* RA Br. 45. Because Ripple Analytics has not contested the district court's basis for dismissing its state law claim, it has waived the issue. *Tripathy v. McKoy*, 103 F.4th 106, 111 (2d Cir. 2024) (a party waives arguments "by failing to adequately raise them in his opening brief").

Even if not waived, the state law claim fails in any event because New York common law regarding unfair competition is substantially the same as the law governing Section 43(a). *See* RA Br. 45; *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 157 (E.D.N.Y 2016). Ripple Analytics' failure to adequately plead and establish standing for its federal unfair competition claim is therefore also fatal to its state law claim. *See also Berni*, 838 F.2d at 648 (affirming

dismissal of unfair-competition claim under New York law where plaintiff failed to plead protectable property right).

The dismissal was proper for an additional and independent reason: New York law requires that the plaintiff also plead and prove bad faith. *See Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 35 (2d Cir. 1995). Ripple Analytics did not satisfy that requirement. Ripple Analytics' complaint vaguely alleged its belief that People Center acted "willfully and with the intent to confuse the public and to injure Plaintiff." A-34 ¶ 56. The only allegations related to People Center's intent were that People Center commenced its use of its own RIPPLING mark in December 2016, became aware of Ripple Analytics' then-pending application to register the RIPPLE mark by August 2017, and continued to use its RIPPLING mark after "the USPTO issued an Office Action denying registration of the RIPPLING mark based on likelihood of confusion with Plaintiff's RIPPLE® mark." A-28-29 ¶¶ 22, 25, 27. As an initial matter, even if these arguments were true, they are not sufficient as a matter of law to show "bad faith." A defendant's continued use of its mark after a USPTO rejection of its trademark application based on the existence of the prior mark does not give rise to an inference of bad faith

unless there is additional evidence that implies the defendant's *intent* to confuse.  *See Kohler Co. v. Bold Int'l FZCO*, 422 F. Supp. 3d 681, 726-30 (E.D.N.Y. 2018).  Ripple Analytics did not allege facts that could imply such an intent.

Furthermore, Ripple Analytics' allegation that the USPTO "denied registration" of the RIPPLING mark "based on likelihood of confusion" is simply false.  The USPTO did not conduct an analysis of the likelihood of confusion.  To the contrary, the USPTO's letter regarding People Center's trademark application, which Ripple Analytics attached to its complaint, informed People Center that the examiner had "found no similar registered marks that would bar registration."  A-50.  It also noted that Ripple Analytics' then-pending application was filed earlier.  A-50.  The USPTO stated that "*[i]f* the mark in [Ripple Analytics'] application registers, [People Center's] mark *may* be refused registration" due to likelihood of confusion.  A-50 (emphasis added).  It informed People Center that it could "address[] the issue of the *potential* conflict" between the marks, but that if it chose not to "submit arguments at this time,"

that would "in no way limit[] [its] right to address this issue later" if registration was in fact refused.  A-50 (emphasis added).[8]

On appeal, Ripple Analytics again attempts to twist the USPTO's letter beyond recognition, ignoring its language and arguing falsely that the USPTO deemed the RIPPLING mark "to be [ ]likely to cause confusion with the RIPPLE® mark."  RA Br. 45.  Because that assertion is flatly contradicted by the USPTO's preliminary letter (which only identified a possible future issue and was not a finding of likelihood of confusion at all, let alone a final determination), Ripple Analytics' appellate arguments fail.

---

[8] In 2020, People Center commenced a cancellation proceeding before the Trademark Trial and Appeal Board ("TTAB") of the USPTO, Cancellation No. 92073848, seeking partial cancellation of the federal registration of the RIPPLE mark.  *See* CA-610 n.129.  The filing predated People Center's receipt of the discovery documents showing the assignment of the mark to Mr. Pusey.  The TTAB proceeding has been stayed pending the final resolution of this litigation.  *See People Ctr., Inc. v. Ripple Analytics Inc.*, No. 92073848 (T.T.A.B. June 2, 2020) (docket entry 7), *available at* https://ttabvue.uspto.gov/ttabvue/v?pno=92073848&pty=CAN.

**E.  The District Court Did Not Abuse Its Discretion in Denying Ripple Analytics' Motion for Leave to Amend Its Complaint.**

Ripple Analytics moved to file an amended complaint on August 22, 2023.  A-238.  The proposed amended complaint—containing only the unfair competition claims—failed to resolve the real-party-in-interest issue: it still did not establish that the only named plaintiff (Ripple Analytics) had any right to sue over the disputed mark.  The trial court referred the motion to the magistrate judge, whose recommendation was for denial of the motion to amend and dismissal.  A-324-31.  There was no error or abuse of discretion in the district judge's *de novo* review and acceptance of the magistrate judge's report and recommendation on February 5, 2024.  A-19-20 (docket entry of Feb. 5, 2024), A-20 (ECF 111).

"While [the court] ordinarily review[s] denial of leave to amend under an 'abuse of discretion' standard[,] [w]hen the denial of leave to amend is based on a legal interpretation, such as a determination that amendment would be futile, a reviewing court conducts a de novo review." *Smith v. Hogan*, 794 F.3d 249, 253 (2d Cir. 2015) (cleaned up).

In its proposed amended complaint, Ripple Analytics revised its allegations to assert that it was "the continuous user of the mark."  A-283 ¶ 2.  It alleged that, after the Assignment Agreement assigned to Pusey "the entire business of Ripple including the goodwill associated with its mark," Ripple Analytics "continued, with Pusey's permission and under his sole and continuous control, to be the exclusive user of the mark."  A-238 ¶ 3; A-289 ¶ 19.  For its unfair competition claims, it alleged that it was the "rightful user of the RIPPLE® mark" and that People Center's actions were "intended to co-opt the goodwill in the RIPPLE® mark."  A-297 ¶ 39, A-296 ¶ 37; *see also* A-298 ¶ 48 ("Plaintiff's goodwill").  It alleged that the RIPPLE mark "is exclusively associated with [its] business."  A-298 ¶ 46.

The magistrate judge accurately explained that a plaintiff need not be the *owner* of a trademark in order to assert an unfair competition claim under 15 U.S.C. § 1125, but it must show that it owns a "proprietary right" in the mark or otherwise has "a reasonable interest to protect."  A-329 (quoting *Gruen Mktg. Corp. v. Benrus Watch Co.*, 955 F. Supp. 979, 984 (N.D. Ill. 1997)); *see also Punchgini*, 482 F.3d at 154.  The magistrate judge also noted that although Ripple Analytics alleged that

53

it was the "exclusive user" of the trademark, A-330, *see* A-283 ¶ 3, A-289 ¶ 19, it did not explain how that alleged use gave it any enforceable right or interest in the mark. And although it argued *in its motion* for leave to amend that it should "be treated as a licensee," A-252, it did not cite any evidence of the alleged license. A-330. Indeed, Ripple Analytics' "licensee" theory is nowhere alleged in its proposed amended complaint. *See generally* A-264-80.

Moreover, Ripple Analytics' new "licensee" theory was directly controverted by its binding admission in its Rule 56.1 Counterstatement that █████████████████████████ ███████████ ███████████ ████████████████████████████████████████████████ ██████████ CA-462 (emphasis added); *see* A-330. The magistrate judge summarized:

> [I]t is clear from the record that the proprietary right to use the trademark remains Pusey's. Indeed, the April 13, 2018 Assignment and Assumption Agreement confirms that Ripple not only lacks ownership of the trademark but also lacks the right to any claims based on the trademark, any ownership of the rights to settle or release such claims; and ownership of "remedies associated therewith."

A-330.

The magistrate judge (and the district judge, adopting the report and recommendation, *see* A-19-20) were correct to find that the proposed amendment was futile. *Kamen v. AT&T Co.*, 791 F.2d 1006, 1010-11 (2d Cir. 1986) (allowing courts to look outside the complaint to competent evidence regarding lack of statutory standing); *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 84-85 (2d Cir. 2014) (allowing court to consider "undisputed facts evidenced in the record" to evaluate standing). Regardless of whether Ripple Analytics described itself as an "exclusive user," an "implied licensee," or whatever other arrangement it might allege, the fact remained that the Assignment Agreement conveyed to Pusey *all* rights in the mark and *all* "causes of action and right to sue for … any rights in and to" the mark. A-360 ¶ 2. *See* 5 McCarthy on Trademarks § 32:12 ("[I]f the license agreement prohibits the licensee from having the right to sue, then it has no right to sue under § 43(a)."). And while Ripple Analytics points to 2 McCarthy on Trademarks and Unfair Competition § 18:43.50 about implied licenses, nothing in McCarthy stands for the proposition that an implied license can somehow override an express grant of all rights to a different party.

55

In light of that agreement and Ripple Analytics' binding admission that Pusey had never licensed the mark to it, Ripple Analytics' vague allegations that it was a "user" of the mark do nothing to establish that it has any legal right in the mark or any protectable interest. It has no right to bring a claim regarding the goodwill associated with the mark, *see* A-296 ¶ 37, A-298 ¶¶ 48, 50, because it assigned both the goodwill and the right to sue to Pusey. *See* A-360 ¶ 2, A-367. Moreover, Ripple Analytics' self-contradictory assertions about who "controls" the mark in the amended complaint also fail to establish that it has any right in the mark. *Compare, e.g.*, A-248 ("before and after that agreement, Mr. Pusey was continuously controlling the mark") *and* A-446 ("the 'control' of the mark by the owner [Pusey], who is permitting the mark to be used, is an element of an implied license"), *with* CA-516 ("███████████████████ ████████████████████████████████████████ ███████████████████████) *and* CA-535 (similar) *and* RA Br. 49 n.5 (asserting that Ripple Analytics "controls the mark").

On appeal, Ripple Analytics steadfastly ignores the fatal flaw of its proposed amendment: uncontroverted record evidence establishes that it has *no* right to *any* claim based on the mark. Because it has no evidence

that its alleged status as a "user" or "licensee" gives it a legally protectable interest despite the Assignment Agreement, it cannot establish that its purported interest is within the zone of interests for an unfair competition claim.

Ripple Analytics primarily argues that the magistrate judge (and therefore the district court) applied the wrong legal standard. RA Br. 45-54. Not so. The report and recommendation accurately applied the requirement that a non-owner trademark-based unfair competition plaintiff show that it has a legal interest in the mark to protect. *See* A-329. The undisputed record evidence showed that it had *no* legal interest in the mark or any claim associated with the mark, so the proposed amended complaint fails. *Punchgini*, 482 F.3d at 154. And in any case, Ripple Analytics is contractually barred from bringing the unfair competition claim, which is also fatal. *Fin. Inv. Co.*, 165 F.3d at 532; *Kroma Makeup*, 920 F.3d at 709-10. Because Ripple Analytics could not overcome that evidence, amendment would be futile.

## II. The District Court Did Not Abuse Its Discretion Regarding People Center's Motion for Leave to Amend Its Answer.

Whether the district court abused its discretion in its interlocutory grant of People Center's motion for leave to amend its answer is

57

irrelevant because the court later changed its mind and denied the motion as moot. *See* SPA-12. The dismissal of Ripple Analytics' complaint under Rule 17 did not depend on the amended answer, so it is a diversion.

A district court's grant of leave to amend an answer is reviewed for abuse of discretion. *See Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). Ripple Analytics has failed to prove an abuse of discretion. Even if the interlocutory order granting the motion had stood, such a grant was within the district court's discretion because People Center showed good cause and Ripple Analytics did not establish undue prejudice.

## A. There Is No Issue for Appeal Because the Motion to Amend the Answer Was Denied.

Ripple Analytics contends that the district court abused its discretion when it permitted People Center to amend its answer to assert that Ripple Analytics lacked statutory standing. RA Br. 15-28. But its extensive discussion of People Center's motion to amend omits that that motion was ultimately denied as moot. *See* SPA-12. Because the district court denied People Center's motion to amend its answer, Ripple

Analytics' arguments regarding the district court's previous interlocutory order granting the motion do not present any issue for appeal.

The district court initially granted People Center's motion to amend its answer. *See* A-12 (ECF 65); A-15-16 (ECF 83). The court orally granted the motion in a pre-motion conference that also covered People Center's Rule 17 motion and Rule 56 motion. *See* A-203-05. The court made clear that its disposition of the motion to amend might be affected by its later rulings on the Rule 17 and Rule 56 motions:

> I'm going to grant the motion to amend liberally. I'm considering your defenses anyway so it's almost—it is a formality but there may be some importance to preserving those rights in the answer. So I'm going to amend the answer. It may be that once I decide these motions, some of those defenses get knocked out or get changed or whatever, but we'll deal with it then. But for now, I'm granting the motion to amend the answer.

A-233-34 (Tr. 31:18-32:1).

As the district court had reminded the parties it might, it later revised its disposition of People Center's motion to amend its answer. *See Grace v. Rosenstock*, 228 F.3d 40, 51 (2d Cir. 2000) ("All interlocutory orders remain subject to modification or adjustment prior to the entry of a final judgment adjudicating the claims to which they pertain."). When the district court granted People Center's motion to dismiss under Rule

59

17, SPA-1, it *denied* People Center's "motions to amend its answer and for summary judgment … as moot."  SPA-12; *see also* A-18 (ECF 96) ("Defendant[']s motions to amend its answer and for summary judgment are denied as moot.").

### B.  Ripple Analytics' Arguments Fail on the Merits.

Even if the issue of People Center's motion to amend its answer were properly before this Court, Ripple Analytics' arguments fail on the merits.  The district court did not abuse its discretion when it initially granted People Center's motion to amend.

### 1.  People Center Demonstrated Good Cause and Ripple Analytics Failed to Prove Undue Prejudice.

Where granting a party's motion for leave to amend would require modifying a scheduling order, the court must "balance[]" the "lenient standard under Rule 15(a)," under which leave to amend is freely given when justice requires, with the requirement under Rule 16(b) that a party show good cause to modify a scheduling order.  *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003).  Under Rule 15(a), "[m]ere delay, … absent of a showing [by the nonmovant] of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.  *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.

1981).  Under Rule 16(b), "whether the moving party can demonstrate diligence" is "the primary consideration" but "not … the only consideration.  The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment … will prejudice" the opposing party.  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

People Center diligently undertook discovery to determine the ownership of the RIPPLE mark.  The district court set a deadline of July 13, 2020, for the parties to move for joinder of additional parties or to amend the pleadings.  *See* A-7 (ECF 15); *see also* CA-14.  Ripple Analytics' discovery responses prior to that deadline gave no indication that its allegations that it owns all "right, title, and interest in and to the RIPPLE® mark," A-30 ¶ 31, A-33 ¶ 50, were false.  Neither its complaint nor its discovery responses prior to the deadline give any indication that it had assigned ownership of the mark to Pusey.

In its June 25, 2020, response to People Center's first set of interrogatories, Ripple Analytics still repeatedly referred to itself as the owner of the RIPPLE mark.  *See, e.g.*, ECF 26-3 at 5 ("Plaintiff's

61

trademark registration"), 9 ("Plaintiff's RIPPLE Mark"); CA-230, 233. In that same response, Ripple Analytics objected to People Center's request that it "[i]dentify each agreement or understanding, including any license, consent, authorization, or permission, given to or by Plaintiff concerning the RIPPLE® Mark." ECF 26-3 at 8-9; *see also* CA-232. Ripple Analytics represented that it "w[ould] produce license agreements concerning the RIPPLE® mark which contain sufficient information to enable [People Center] to ascertain the answer to the relevant portions of this Interrogatory." ECF 26-3 at 9; *see also* CA-233. But Ripple Analytics did not produce the documents related to the assignment until October 5, 2020, *see* A-316 n.7; *see also* CA-257, after it changed counsel in August 2020. A-7-8 (ECF 19-26). Indeed, this did not occur until almost three months after the deadline in the scheduling order and over 100 days after Ripple Analytics represented in its discovery responses that it was the owner of the mark.

And after Ripple Analytics produced the documents buried in thousands of pages of discovery, CA-16, CA-257, it changed counsel again in January 2021. A-9 (ECF 37-45). That change stalled the litigation through mid-2021. *Id.* When the litigation resumed, Ripple Analytics

62

continued to represent that it owned the mark as People Center diligently conducted further discovery. Pusey testified on August 26, 2021, that "Ripple Analytics owns [the trademark]." SPA-2 (quoting CA-405 (Tr. 123:13-15)); *see also* CA-404 (Tr. 47:10-11) (███████████████

███████████████). On November 17, 2021, Pusey testified on behalf of Ripple Analytics. *See* Fed. R. Civ. P. 30(b)(6). ███████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████ CA-431 (Tr. 168:18-23); *see also* CA-433-34 (Tr. 170-71). Pusey wrote both the Assignment Agreement and the Bill of Sale. *See* A-338; *see also* CA-189, CA-190, CA-193. When counsel for People Center attempted to question Pusey, as Ripple Analytics' Rule 30(b)(6) representative, regarding the potential issue regarding the real party in interest, Ripple Analytics' counsel objected and instructed Pusey not to answer. *See* SPA-2 n.1; *see also* CA-187-88. And Ripple Analytics' counsel asserted that ████████████████████████████████

███████████████ CA-187 (Tr. 102:17-19).

Only a few months after the litigation resumed, People Center notified Ripple Analytics on December 30, 2021, of its intent to move to amend its answer. *See* A-420. It was not until January 12, 2022, in email correspondence stating Ripple Analytics' intent to oppose People Center's motion, that Ripple Analytics asserted through counsel—for the first time in the litigation—that Pusey was the "assignee" of Ripple Analytics and had "standing to bring the action." A-422. Two days later, People Center moved for leave to file its motion to amend under seal. A-11 (ECF 62). The district court granted the motion to file under seal and instructed People Center to file the motion to amend only after it was fully briefed. A-11 (docket entry of Jan. 20, 2022). On February 2, 2022, People Center served Ripple Analytics with its motion to amend and supporting papers. *See* CA-1. The fully briefed motion was filed on February 23, 2023. *See* A-12 (ECF 65).

Ripple Analytics contends that it was "severely prejudiced" by the amendment because it came "after the close of discovery." RA Br. 24. This is disingenuous at best. First, Ripple Analytics misstates the facts regarding the discovery deadline; the discovery deadline was extended to April 1, 2022, on a joint motion. A-12-13 (ECF 68 & Mar. 17, 2022 Order);

*see also* A-11-12 (ECF 61, 64 & Orders of Nov. 30, 2021 and Jan. 28, 2022). People Center raised its concerns regarding the real party in interest in the Rule 30(b)(6) deposition in November 2021, *see* A-338; *see also* CA-187, and notified Ripple Analytics of its intent to amend its answer in December 2021, *see* A-420. *Contra* RA Br. 25 (asserting it "first learned" of People Center's intent to amend in February 2022, but also that it "quickly responded," citing correspondence in January, *see* A-422, A-427 (CA-472-74)). Although People Center expressed that the standing defect was "likely to have significant impact on discovery and further proceedings" and it was therefore inappropriate to proceed with the remaining discovery, A-425, Ripple Analytics insisted that discovery should continue. A-427. Ripple Analytics cannot complain of delay in filing a motion to amend and/or the amended answer that was caused by its own repeated misrepresentations about ownership of mark.

Moreover, the procedural history shows that People Center acted diligently. The relevant documents were produced in a set of thousands of documents. *See* A-436; *see also* CA-16, CA-257. And after the documents were produced, the litigation stalled due to Ripple Analytics' decision to change counsel. A-9 (ECF 37-45). During the whole time,

65

Ripple Analytics maintained it owned the mark, *see* CA-429-34, until just weeks before the amended answer was filed. Given the totality of the facts, it is clear People Center did not engage in undue delay.

Moreover, despite insisting that it was unduly prejudiced by People Center's amendment, Ripple Analytics *also* contends that the court should not have granted People Center's Rule 17 motion because ratification "would not have required any additional discovery." RA Br. 5; *see also* RA Br. 40-41 (contending that "[t]he allegations asserted in the operative pleading as asserted by Ripple are equally applicable to Mr. Pusey" and "all of the claims and defenses would involve the same operative facts, and thus, the same documents and witnesses"). That undercuts Ripple Analytics' prejudice argument. As discussed above, Ripple Analytics' claim that the allegations and claims would not have been altered by Rule 17 curative procedures is false. But in any event, Ripple Analytics cannot reasonably insist on the one hand that it was prejudiced by People Center's addition of arguments that Ripple Analytics lacked standing while also claiming on the other hand that there was no standing issue and that allowing Pusey to join the suit would not require any additional discovery.

### 2. People Center Did Not "Waive" Its Argument that Ripple Analytics Failed to Establish Necessary Elements of Its Claims.

People Center's argument that Ripple Analytics lacked "statutory standing" is not a waivable affirmative defense. It is the plaintiff's burden at each stage of the proceeding to support its claim. For a statutory claim, one part of plaintiff's claim is to establish that the plaintiff's alleged injury is within the "zone of interests" of the statute. *Lexmark*, 572 U.S. at 131. A plaintiff must also "demonstrate its own right to use the mark" to succeed on an unfair competition claim. *Punchgini*, 482 F.3d at 154.

Ripple Analytics' lack of ownership and legal right to use the mark "is a negative defense, not an affirmative one." *N. Star IP Holdings, LLC v. Icon Trade Servs., LLC*, 710 F. Supp. 3d 183, 198 (S.D.N.Y. 2024).[9] Accordingly, it was not necessary for that defense to be raised in an answer and it is rightfully a basis for a Rule 17 dismissal. The district

---

[9] The statutory standing cases cited by Ripple Analytics regarding affirmative defenses and waiver, RA Br. 21, do not relate to trademark law or the Lanham Act. Those cases say nothing about whether establishing the right to sue over a mark is an affirmative defense or an element of the plaintiff's claim for infringement and unfair competition. It is the latter, according to applicable case law.

67

court was correct to dismiss the complaint on this basis. That made the amended answer unnecessary, and the district court, accordingly, denied People Center's motion to amend as moot.

Even if this issue *were* an affirmative defense, it was not "waived" simply because it was not included in People Center's original answer. Because People Center was not on notice of Ripple Analytics' lack of statutory standing until after its answer (and after the deadline to amend), it cannot reasonably be said to have waived its right to raise that issue—especially because Ripple Analytics' complaint, discovery responses, and testimony obfuscated and concealed the true facts. *Cf. Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701-02 (2d Cir. 2010) (plaintiff's complaint and interrogatory responses were insufficient to provide defendant with notice of plaintiff's new negligence claims); *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 136 (2d Cir. 2014) (explaining that waiver is the knowing and deliberate relinquishment of a known right).

## CONCLUSION

For the reasons set forth above, this Court should affirm the district court's judgment.

Respectfully submitted,

*/s/ Jeremy M. Bylund*

Bruce W. Baber
KING & SPALDING LLP
1180 Peachtree Street NE
Suite 1600
Atlanta, GA 30309
(404) 572-4826
bbaber@kslaw.com

Tim F. Williams
DORITY & MANNING, P.A.
75 Beattie Place, Suite 1100
Greenville, SC 29601
(864) 271-1592
timw@dority-manning.com

Jeremy M. Bylund
E. Caroline Freeman
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
jbylund@kslaw.com
cfreeman@kslaw.com

*Counsel for Defendant-Counter-Claimant-Appellee People Center, Inc.*

October 15, 2024

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because it contains 13,993 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font.

Date: October 15, 2024

*/s/ Jeremy M. Bylund*
Jeremy M. Bylund

*Counsel for Defendant-Counter-Claimant-Appellee People Center, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 15, 2024, an electronic copy of the foregoing was filed with the Clerk of Court using the ACMS system and thereby served upon all counsel appearing in this case.

*/s/Jeremy M. Bylund*
Jeremy M. Bylund

*Counsel for Defendant-Counter-Claimant-Appellee People Center, Inc.*